UNITED STATES, Appellee

v.

ROBERT L. COOPER, Private E–2; LEON D. MOONEYHAM, Private First Class; LE ROYCE C. McNEILL, Corporal; ALFRED F. RICHARDS, Private E–2; ANDREW LUCERO, Private First Class; and JOHN J. CORNETT, Private First Class, U. S. Army, Appellants

2 USCMA 333, 8 CMR 133

334

No. 708

Decided March 24, 1953

Lt Col Herman P. Goebel, Jr., U. S. Army, Lt Col Stewart H. Legendre, U. S. Army, and 1st Lt Patrick H. Thiessen, U. S. Army, for Appellants.

Lt Col Thayer Chapman, U. S. Army, and 1st Lt Kenneth A. Howard, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Each of the several accused in this case has been convicted, following joint trial by general court-martial, under two specifications of robbery, one specification of assault with intent to commit murder, and one specification of assault with intent to commit robbery, violations, respectively, of the Uniform Code of Military Justice, Articles 122 and 134, 50 USC §§ 716 and 728. Upon their petition, following approval and affirmance by the convening authority and a board of review, this Court granted further review, limited, however, to the following issues:

"1. Whether the failure to bring the testimony of the accused LUCERO (Appellate Exhibit 1) on the issue of voluntariness of his confession before the court was prejudicial error.

"2. Whether the law officer erred in instructing the court as to the maximum sentence applicable under the findings."

II

A substantial segment of the evidence against the accused was contained in pretrial confessions introduced by the prosecution. Each confession was admitted without objection, save that of accused Lucero. At the time the confessions were offered in evidence, counsel for Lucero requested a hearing outside the presence of the members of the court-martial for the purpose of making an offer of proof. The request was granted, and the offer of proof was received out of the presence and hearing of the court. The proceedings were reopened, and defense counsel thereupon moved that he be permitted to present, on behalf of Lucero, again outside the presence and hearing of the court, preliminary evidence concerning the inadmissibility of Lucero's confession by reason of its involuntariness. Before granting the motion, the law officer advised each accused—including Lucero—of his right to assume the witness stand for the limited purpose of testifying as to the character of his confession as regards volition. All declined to do so, whereupon the law officer said:

"Now, it is my understanding at this time that the defendant Private First Class Lucero has made a decision in regard to this matter and his counsel has made a motion that his testimony in regard to the voluntary nature of his confession be made outside the hearing of the members of the court and if that is the decision of this defendant and if that is the request of the defense counsel I will sustain it, so the members of the court may be excused and withdraw out of hearing of the witness."

Following this action, the hearing requested by the defense motion was held. Only the law officer, trial counsel, defense counsel, the reporter, accused and certain guards were present. Testimony relating to the involuntary nature of Lucero's confession was received, and a complete transcript of the proceedings was made, which is a part of the record presented to this Court. At the conclusion of the hearing, the court was reconvened, and trial counsel again offered the confessions in evidence. Defense counsel renewed his opposition to the offer as regards Lucero's statement, basing his objection on the evidence adduced in the out-of-court hearing which, he stated, established its involuntary nature. The law officer nevertheless admitted all confessions in evidence.

Appellate defense counsel now argues, in behalf of Lucero, that he was deprived of his substantial right to have the issue of voluntariness resolved by each individual member of the court. The predicate for this argument is not

336

that the law officer did not instruct the court that each member might decide the question for himself—for that instruction was given—but rather it is based on the view that, because the law officer did not present to the court the testimony adduced at the out-of-court hearing, the members of the court-martial were deprived of the only possible basis upon which an intelligent and informed determination of the issue of voluntariness might be made.

## III

Of course, Lucero was entitled to have whatever evidence he cared to introduce considered by each of the members of the court in reaching his individual decision of the question of volition. Manual for Courts-Martial, United States, 1951, paragraph 140a. Undoubtedly, also he had the right—as exercised here—to have appropriate evidence received by the law officer outside the presence and hearing of the court for the purpose of enabling that functionary to make his preliminary determination of the question of admissibility. And, finally, he surely had the right—had he wished to exercise it—to have the evidence produced during the out-of-court hearing fully brought before the court on reconvention. However, it may be asked, was the law officer here—under the circumstances of this case—under a duty to bring that evidence before the court without request by defense counsel? We think not. Certainly—in our view —the actions of accused, Lucero—and his counsel in his behalf—in declining the offer to testify concerning the circumstances surrounding the procurement of the confession, coupled with counsel's specific request that evidence of involuntariness be taken outside the hearing of the court, amounted in totality to an affirmative position diametrically opposed to one reflecting a desire to have the evidence in question produced for the benefit of members of the court. The approach of defense counsel at the trial was, we are sure, thoughtfully—and perhaps wisely—planned as a matter of tactics. His choice, in effect, was to arrange that the informed determination of voluntariness be made

by the law officer alone—for he doubtless wished to avoid the practical harm which might result if the court were acquainted with one damaging matter brought out during the out-of-court hearing, namely: that Lucero had been implicated fully, specifically and independently by every single one of his several co-accused. Our conclusion, therefore, is that the right to have the evidence bearing on the involuntary nature of Lucero's confession presented to the court was expressly waived. There was, therefore, no error on the part of the law officer in failing to produce the details of that testimony in open court. This is not to say that the right to have such evidence considered by the court is not a substantial one. Manifestly, it is a very important right, and one we would have protected jealously had the accused wished to claim it. But even the most fundamental rights—with very limited exceptions 'not applicable here—may be waived. This was the situation in the case at bar. Moreover, from the record it is quite apparent that the refusal of Lucero to take the stand, and the request for an out-of-court hearing, were made with complete awareness that the matters adduced beyond the court's presence would not be brought before it, in the absence of affirmative action by the defense. We do not have here, therefore, a case of an uninformed "waiver"—of action taken in ignorance of the consequences. See United States v. Evans and Parker, (No. 457), 4 CMR 133, decided August 8, 1952. Instead, we have an instance of competent counsel seeking to protect a client's interests with full knowledge of what he was doing.

## IV

The second problem raised here concerns the correctness of the law officer's instructions having to do with the maximum sentence which might lawfully be imposed on the accused. Each was convicted under Specifications 1 and 4 of Charge I, the former alleging robbery of Kang Man Kil of $23.33 by force and violence, and the latter charging robbery of Ra Byong Chol of the sum of $3.33. Each was also convicted

under the two specifications of Charge II, the first of which set out an assault upon Park Chang Ho with intent to commit murder, and the latter an assault upon Kang Man Kil with intent to commit robbery. The law officer believed apparently that the offenses involved in Charge I—since they "arose out of the same transaction and the same evidence proved both crimes"—would not support separate sentences. Consequently, he concluded that the maximum imposable under Charge I would come to dishonorable discharge, total forfeitures, and confinement for ten years. With regard to Charge II, he ruled that the offenses stated therein were separate, with the result that each would support a sentence to dishonorable discharge, total forfeitures, and confinement for twenty years. So, in summing up, he charged the court-martial that the maximum sentence which could be adjudged on all charges and specifications reached a total of dishonorable discharge, total forfeitures, and confinement at hard labor for fifty years.

Examining the soundness of the law officer's instructions in these particulars, it is readily apparent that he erred in favor of the accused in stating that the two specifications of Charge I would not support separate maximum sentences. Patently, these offenses were separate—for they involved wholly distinct robberies of entirely different victims. His view of the two specifications of Charge II—that they were separate and that each would support a separate maximum sentence—was quite correct, at least in so far as those two specifications considered alone are concerned. However, we note that Specification 2 of Charge II alleged an assault upon Kang Man Kil with intent to commit robbery, and Specification 1 of Charge I involved a robbery of the self-same individual by force and violence. This raises the question of whether Specification 1 of Charge I and Specification 2 of Charge II relate to "separate" offenses within the meaning of paragraph 76a (8) of the Manual, supra, authorizing the imposition of the maximum punishment for "separate" offenses growing out of the same trans-

action. Appellate defense counsel argues that the assault with intent to commit robbery set out in Specification 2 of Charge II is an offense included within the robbery alleged in Specification 1 of Charge I, and that, therefore, separate maximum punishments cannot be imposed for each. If the premise of this argument be sound, the conclusion certainly follows—for paragraph 76a (8) of the Manual, supra, provides expressly that an accused may not be sentenced separately for a principal and at the same time for a lesser included offense. There is no doubt in our minds that counsel is correct. Where, as here, the assault with intent to commit a robbery constitutes the force and violence laying at the core of the robbery charge, the former certainly is a lesser crime included within the latter. Accordingly, in this case, the accused could not lawfully have been sentenced under Specification 1 of Charge I and under Specification 2 of Charge II as well. The maximum punishment for each is the same: dishonorable discharge, total forfeitures, and confinement for ten years—so there is no question concerning the applicable limit. This is the maximum which might be adjudged in this case under the two specifications here in question.

By way of summary, the accused could lawfully have been sentenced to dishonorable discharge and total forfeitures under each of the charges against them, plus ten years' confinement under Specification 4 of Charge I, twenty years under Specification 1 of Charge II, and ten years under Specification 1 of Charge I—which maximum includes the offense set out in Specification 2 of Charge II: a total period of confinement at hard labor of forty years. The law officer, therefore, erred in describing the maximum confinement to be fifty years. Despite the fact that the period of confinement in fact adjudged was substantially less than the maximum limit set by the law officer—twenty years as to each accused save Lucero, and, for him, eighteen years—we have no way of knowing what the sentence, as regards confinement, would have been had the court been instructed properly. For this reason the instruc-

tional error on the part of the law officer must be deemed to have been prejudicial.

## V

In conclusion, we turn to a matter raised by counsel in supplemental briefs filed after argument. Although we dislike generally the practice of raising points after a case has been briefed and argued finally, we are entirely willing to recognize the exceptional case. The present one is of this nature—and, in the interest of preventing a substantial miscarriage of justice to the accused, we must consider the additional point raised.

The additional point relates to the instructions of the law officer. In advising the court on the elements of the offenses specified in Charge II—assault with intent to commit murder (Specification 1), and assault with intent to commit robbery (Specification 2)—the law officer made no attempt whatever to define either of the substantive offenses alleged: murder and robbery. For reasons which we will state shortly, we shall, for the moment, confine ourselves to the failure to define murder. This was clearly prejudicial error. United States v. Ollie C. Williams (No. 251) 2 CMR 137, decided March 14, 1952; United States v. Banks (No. 382), 4 CMR 71, decided July 24, 1952; United States v. Avery (No. 809), 4 CMR 125, decided August 6, 1952; United States v. Lookinghorse (No. 1124), 5 CMR 88, decided August 29, 1952. See also United States v. Drew (No. 422), 4 CMR 63, decided July 23, 1952; United States v. Cromartie (No. 374), 4 CMR 143, decided August 6, 1952; United States v. Bill J. Wright (No. 1081), 5 CMR 30, decided August 20, 1952. As such, of course, it requires that the convictions of accused under Specification 1 of Charge II be set aside.

However, a wholly different situation is presented in the case of the assault with intent to commit robbery. Although the law officer did not *as to this crime* define robbery, he had earlier defined that offense fully in his instructions on the elements of the robberies specified in Charge I. Therefore, the court had in fact received adequate instruction concerning the elements of robbery. Viewing the instructions as a whole, therefore, we find there no reversible error in failure of the law officer to spell out once more the elements of robbery in his instructions relative to assault with intent to commit robbery.

Accordingly, the convictions of assault with intent to commit murder are reversed. The record is returned to The Judge Advocate General, United States Army, for rehearing, for reference to the board of review for consideration of lesser included offenses and reconsideration of the appropriateness of sentences, or for other action not inconsistent with this opinion.

Chief Judge QUINN and Judge LATIMER concur.