UNITED STATES, Appellee

v

WILLIAM M. EVANS, Airman Second Class, U. S. Air Force, Appellant

13 USCMA 598, 33 CMR 130

No. 16,172

April 5, 1963

*Lieutenant Colonel Quincey W. Tucker, Jr.,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel E. Henderson, Jr., Colonel Joseph E. Krysakowski,* and *Lieutenant Colonel Wallace N. Clark.*

*Captain Richard T. Yery* argued the cause for Appellee, United States,

With him on the brief were *Lieutenant Colonel Emanuel Lewis* and *Lieutenant Colonel Simpson M. Woolf.*

## Opinion

KILDAY, Judge:

Appellant was tried by general court-martial convened at Holloman Air Force Base, New Mexico, on seven specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. Contrary to his pleas of not guilty, he was convicted as charged. The court-martial sentenced him to be separated from the service with a bad-conduct discharge, to forfeit all pay and allowances, to be confined to hard labor for one year, and to be reduced to the grade of airman basic. The convening authority approved, and a board of review in the office of The Judge Advocate General of the Air Force affirmed the findings and sentence. Thereafter, pursuant to Article 67(b)(3) of the Code, 10 USC § 867, appellant petitioned this Court for grant of review. We granted his application in order to consider the following two issues:

1. Whether the law officer erred in not allowing the defense to contest the admissibility of appellant's written pretrial confession in an out-of-court hearing.

2. Whether the staff judge advocate was correct in advising the convening authority that there was no "Real issue of denial of counsel" in regard to the admissibility of the confession.

In view of the nature of the foregoing issues, it is not necessary to set out the facts and circumstances surrounding the several larcenies. Such matters as are germane to resolution of the questions before us will be stated in connection with our consideration of each.

In the course of presenting its evidence, the prosecution called one Jesse Casaus, a special agent of the Office of Special Investigations, as a witness. After testimony as to property he had recovered in a search of appellant's quarters, the agent was asked whether he had interrogated appellant. At that point defense counsel informed the law officer that he desired an out-of-court hearing on that line of questioning. In the ensuing closed session defense counsel indicated his desire to contest the admissibility of the evidence, but the law officer informed him he thought this to be premature. Thus, he noted any objection was anticipatory, for trial counsel had not yet offered anything. The law officer stated he was "not prepared to entertain any evidence on any issue until at such time in this inquiry of the witness, the objection is brought out." Defense counsel responded:

"Well, he has made a question in the form: did he have an opportunity to interrogate him. Actually I agree with you, he hasn't offered the statements yet, but before the court gets in front of it the fact a statement was made, I would like to have an opportunity."

The law officer replied that the defense should be entitled to this opportunity and that he thought the procedure at that "stage of the game" was to let trial counsel proceed, in the closed hearing, to establish a predicate for admitting appellant's pretrial statement, and at that time take up the specific problem that defense counsel was apparently entertaining. Defense counsel inquired whether he would have an opportunity to object when the prosecution offered the statement. The law officer noted that the statement could not be offered in a closed out-of-court hearing, but stated he would like the defense "to lay the foundation" as he wanted "to know what the defense's objection . . . [was] specifically." In response, defense counsel pointed out, "It won't be in the statement." In light of that development, trial counsel thereupon suggested his willingness to proceed to show that the requirements of Article 31 were met so that "perhaps at this point [defense] counsel would be in a better position to object to it." The law officer, however, indicated further proceedings outside the hearing of

the court members would be superfluous, as indicated by this colloquy:

"LO: At this point, gentlemen, I see no need for an out-of-court hearing inasmuch as factually you will probably want these issues before the court, is this correct?

"DC: I want them before the law officer first with his ruling. It depends on the outcome of that ruling whether I will have it before the court or not, sir.

"LO: The objection is that he has made a statement, is this correct?

"DC: No, my whole objection is the denial of counsel in the investigator's attempt to get a statement out of this man and that is the only—it is not in the statement. We are not questioning whether he was read Article 31.

"LO: Right. In that case, then I think, gentlemen, that the issue should be presented before the court and you can make your objection to the fact that—and it will preserve whatever error you felt may be necessary."

Trial counsel expressed misgivings as to this procedure, and suggested handling the defense objection in the closed session, so that if the law officer upheld the objection "then the court will never know that a statement was made." Defense counsel agreed that was what he sought. As the following exchange indicates, the law officer labored under no misapprehension of the defense position, but persisted in his ruling that the matter would be covered in open court:

"LO: I understand now what defense has in mind and I think we will submit it before the court unless you feel specifically other than that particular item, other factors which may come up—that you have any problem in that area.

"DC: No, I don't think of anything adverse that is going to come out.

"LO: I feel at this point then that the fact that the statement may or may not have been made can be cured by adequate instruction in the event there is a favorable ruling.

"DC: You are going to give me another opportunity if I request an out-of-court hearing to hear these facts after he has offered it?

"LO: No, I think we will proceed with the court in session with the Government laying its proper foundation and then go specific on the limited issue of the voluntariness, as I understand, or the denial of counsel."

The law officer indicated resolution of the objection interposed by the defense would require a hearing of the "facts [sic] situation" and stated that he thought "the court is entitled to hear this, too." Defense counsel complained this meant that the court members would also be able to hear his arguments on the law, which he believed improper. The law officer replied that when they reached the point of argument on the law, the court would be closed so that the members did not hear the argument but, as they would ultimately have to decide the matter, they were entitled to hear the facts bearing on the issue. The law officer stated that if he understood defense's position "there is only one single item that you want to specifically explore and this is denial of counsel," to which defense counsel replied, "This is true."

After additional conversation to the effect that only the issue of denial of counsel was involved, and that any argument would be heard outside of the hearing of the court, the trial counsel requested a few minutes to research some law before proceeding in this area. The law officer replied that he did not think that would be necessary at that point; that there would be "plenty of time" for that purpose in the eventuality of an argument on the law. After once more obtaining the defense's assurance that the only fact issue they desired to raise was the denial of counsel, the law officer stated:

"And I think this should go before the forum—the fact issue—and then we will develop the law as it comes along."

When the prosecution inquired wheth-

er this was agreeable with defense counsel, the latter replied:

"Go ahead and ask the witness the questions on the facts leading up to this and then it would be my idea to close at that time to hear argument, if that is agreeable with everybody."

It seems abundantly clear the law officer repeatedly stated, in unequivocal terms, that no out-of-court ▆▆▆▆▆ ▆ hearing was necessary, or that they would proceed in open court. It also appears that trial counsel expressed his misgivings as to this procedure. Finally, and in what appears to be desperation, defense counsel reluctantly acceded they may as well "go ahead," as indicated by the last quotation above. There can be no question, nevertheless, that defense counsel requested an out-of-court hearing to hear evidence on the single issue of denial of counsel. It is equally clear he continued to insist on such a preliminary closed session before evidence concerning appellant's pretrial confession be heard by the court-martial members. Under these circumstances, we cannot agree with appellate Government counsel in their contention that the law officer did not deny the defense an opportunity to contest the admissibility of the confession in an out-of-court hearing.

The action of the law officer was error. United States v Cooper, 2 USCMA 333, 8 CMR 133; United States v Jones, 7 USCMA 623, 23 CMR 87; United States v Dicario, 8 USCMA 353, 24 CMR 163; United States v Cates, 9 USCMA 480, 26 CMR 260; United States v Young, 10 USCMA 249, 27 CMR 323.

Having held that the law officer erred in this regard we must determine, in accordance with the mandate of Article 59, Uniform Code of Military Justice, 10 USC § 859, whether such error of law materially prejudiced the substantial rights of the appellant. Resolution of this question requires that we examine into the progress of the trial after the denial of the out-of-court hearing.

Immediately after the law officer's refusal, the court was opened and trial counsel continued his direct examination of the witness, Special Agent Casaus. The latter testified he had appropriately warned appellant, as required by Article 31 of the Code, 10 USC § 831, and also to the voluntary character of the confession to which appellant subscribed and swore. Thereupon trial counsel offered the same in evidence. Defense counsel objected to its admission until the defense had "time to examine the witness on the method of taking, and so forth." After several questions by the law officer, defense counsel was permitted to cross-examine the witness. He first inquired of the agent as to what transpired at appellant's room in the barracks which was then being searched. The special agent replied as follows to defense counsel's specific inquiry:

"Q. At any time during the period you were in that room that afternoon did Airman Evans request to consult with a lawyer?

"A. No, sir, he made no such request.

"Q. He made no such request that afternoon in the room.

"A. In the room, no, sir."

It developed that the parties proceeded from appellant's quarters to the OSI office. With regard to what transpired there defense counsel asked the following questions and the special agent gave the following answers:

"Q. At any time while you had him there in the OSI room, did he make any request to you for counsel?

"A. Immediately after I had read again Article 31 and explained it to him and advised him of the nature of the investigation, Airman Evans asked a question if he could have legal counsel in a case like this and I answered, 'Yes.'

"Q. Did you then seek to find him counsel or reference him to the Base Legal Office or tell him he could have civilian counsel?

"A. No, sir, this affirmative answer apparently satisfied him and we proceeded with the interview."

The agent testified he continued his interview with appellant and that the

latter made no request to discontinue the interview; that appellant merely asked a general question about counsel, "[i]f he could have counsel in a case like this"; that at no other time did appellant make a request for counsel.

On re-direct examination by trial counsel, Agent Casaus said appellant "did not specifically make a request that he wanted legal assistance"; that the question previously recited was the only one appellant asked about counsel; and that he answered "Yes" in response to that inquiry by appellant. Further, the agent testified, appellant did not ask him to contact anyone, nor if he could use the phone. Casaus averred that "If he had asked for counsel, we would have terminated the interview to afford him the opportunity to get counsel."

At the conclusion of the testimony by the special agent, appellant was called to the stand for the limited purpose of inquiry with reference to the statement. Appellant testified as follows:

"A. I first talked to Mr. Casaus in the Orderly Room of the 6580th Air Base Group. From there Mr. Casaus, the Commander, Major Long, and the First Sergeant, Sergeant Chitty, accompanied me to my room without stating the purpose at that time. We entered the room and Mr. Casaus read to me Article 31 of the Uniform Code of Justice and then he told me that he was investigating the premises for a turntable, speakers, and an amplifier. At this point he did inform me that I did not have to make any statement and I asked him if I could have legal counsel.

"Q. At what point of time was this? At what point of time did you ask him this?

"A. This was immediately after he read Article 31 to me.

"Q. What was his reply?
"A. There wasn't any reply to this.

"Q. Did he make any motions to you?
"A. Motions?

"Q. Right.
"A. Not to me. He just carried

on in the room, looking at all the items he desired to look at.

"Q. And you are saying to this court that you made a request for counsel up in the room?
"A. I did.

"Q. Are you saying also to this court that there was no reply?
"A. Yes, that is what I indicated.

"Q. O. K. Were you of the opinion at that time that you had a right to counsel?
"A. I hadn't any idea. I didn't know anything about it.

"Q. And then immediately after that where did you go?
"A. After the search was conducted and the items they wished removed from the room were removed, Mr. Casaus, the First Sergeant, Major Long and I think another OSI agent walked down toward Barracks 338 and then I was conducted to Mr. Casaus' car and driven to the OSI building on this Base.

"Q. O. K. Did he again read you Article 31?
"A. He did on entry to his office read Article 31 to me.

"Q. O. K. Did you again make a request for counsel?
"A. I did at that time also.

"Q. Could you recall exactly the words that you said?
"A. Well, Mr. Casaus made some sort of statement indicating to me that he wanted me to write something for him, write the statement out for him that had before been given in the room. Well, he wanted it on a piece of paper and I told him at that time that I couldn't write anything for him without the help of a lawyer and again at this time it was brushed over with some sort of statement, 'It wasn't needed,' or something, and we continued on talking.

"Q. Was there any other mention of counsel made at that interview at that time?
"A. No, sir, there was not.

"Q. All right. Were you of the opinion at that time—did you know

whether or not you had a right to counsel at that time?

"A. I hadn't any idea whatsoever.

"Q. Did he tell you that you had a right to civilian counsel?

"A. No, sir, he didn't.

"Q. Military counsel?

"A. No, sir, he didn't."

Appellant's reply to a question by a member of the court is also significant. In response to this specific inquiry:

"Did you request of Mr. Casaus legal counsel or did you request as to whether or not you could receive counsel?"

appellant testified:

"Well, sir, my intent in asking was for counsel."

Special Agent Tafoya, who was also present at the interrogation and, previously, during a portion of the search, was called by the prosecution. He testified on the matter of counsel substantially as had his fellow agent Casaus. Neither the Commander, Major Long, nor the First Sergeant, Sergeant Chitty, who appellant testified were present, was called as a witness. At the close of the testimony of Tafoya, the court was excused and an out-of-court hearing was held during which legal arguments were heard on the admissibility of appellant's confession as affected by the purported denial of counsel. In the course of that closed session defense counsel informed the law officer that he did not challenge the confession on any other grounds, with the exception of certain statements therein which he claimed related to offenses not charged and a large portion of the confession which was masked out. At the conclusion of the out-of-court hearing the confession of appellant was admitted into evidence.

Government appellate counsel argue that appellant was in no event prejudiced since the evidence presents no "issue of admissibility" on the question of denial of counsel. In making this argument Government counsel rely upon the following language of Chief Judge Quinn in United States v Young, supra, 10 USCMA at page 251:

"In United States v Cates, 9 USCMA 480, 26 CMR 260, we held that it is error to deny the accused's request for a preliminary out-of-court hearing to determine the admissibility of a pretrial statement made by him. . . . *The question then is whether an issue of admissibility is presented by the record of trial. If there is none, the accused obviously was not harmed by the failure to hold the preliminary hearing.*" [Emphasis supplied.]

In the *Young* case, the Chief Judge concluded the evidence did raise an issue of admissibility, and stated:

". . . On the basis of this evidence we cannot conclude, as a matter of law, that the interrogation was entirely nonmilitary in nature. If the interrogation is determined factually to be military in nature, the evidence patently raises the question whether the accused was advised before or after the statement of his rights under Article 31 of the Uniform Code. Accordingly, the case comes within our decision in United States v Cates, supra." [10 USCMA at page 252.]

We adhere to the language of the Chief Judge above-quoted. However, it must be noted that in *Young*, the law officer interrupted the testimony of the accused; refused to permit him to complete his testimony; and, over objection of accused, the hearing was conducted in the court members' presence. As above-quoted, the Chief Judge determined that, on the basis of the evidence before this Court, it could not be said as a matter of law that the interrogation was entirely nonmilitary in nature; hence, if the interrogation was determined factually to be military in nature, the evidence in that case raised the question of whether accused had been properly advised of his rights under Article 31, Uniform Code of Military Justice.

The case presently before us, however, presents a different picture. The appellant was permitted to complete his testimony, and the transcript makes clear that the evidence, and all the evidence, that would have been offered by both sides at the out-of-court hearing, had it been held, was "spread

**603**

across the record." It can therefore be determined whether the confession was not involuntary as a matter of law, and whether the issue of voluntariness by reason of denial of counsel was properly submitted to the court-martial as an issue of fact. See Bray v United States, 306 F2d 743, 750 (CA DC Cir) (1962).

It should be pointed out that in the present instance the law officer, in proper language, advised the court-martial that if the accused requested and was denied his right to consult counsel, or was misadvised as to his right to counsel, it must refuse to consider the statement. Nor is there any question as to whether the law officer properly placed the burden of proof in this respect upon the Government.[1]

From the evidence in this case, it can be determined that the confession of the appellant was not inadmissible as a matter of law. Whether appellant did no more than request general information as to his right to counsel and did not make a direct request for advice, or whether the special agent frustrated appellant's attempt to obtain legal help, still and all the factual issue posed by the evidence was submitted to the court-martial by the law officer in correct legal form. Therefore, no prejudice could result to the appellant. See, generally, United States v Brown, 13 USCMA 14, 32 CMR 14, and authorities therein collated.

We adhere to our previous holdings, herein cited, that the defense, as a matter of right, is entitled to an out-of-court hearing on the admissibility of pretrial statements. We hold, again, that it is error to deny that right when it is timely and properly requested. We have no patience with law officers who, under a pretext of saving time or otherwise, deny or abridge that right. That the proper administration of military justice—whether overseas or in the United States—is a matter of important and urgent concern, is beyond cavil. And we fail to perceive wherein military missions, necessities, or exigencies are in anywise mutually in-

consistent with the proper administration of military justice. Certainly, adherence to the rule set forth in Cates, Young, and allied cases, will not disrupt other urgent military operations. Rather, compliance with such procedural and substantive safeguards is the essence of military due process. Needless to add, the impact of fair and impartial justice on morale and discipline in the armed forces cannot be overestimated.

The decision of this Court in United States v Cates, supra, in setting forth the rule with which we are here concerned, makes mention of the fact that some precedents have held it to be non-prejudicial to deny an out-of-court hearing on admissibility if the evidence is sufficient to support the trial judge's ruling admitting the pretrial statement into evidence. We refused to accept that rule, but such authorities do exist, as evidenced by the citations there listed. However, it would appear that Tyler v United States, 193 F2d 24 (CA DC Cir) (1951), was inadvisably included in that list.

In Cates, supra, we cited in support of the "later and better rule" we chose to follow with respect to the right of an out-of-court hearing, the following authorities: United States v Carignan, 342 US 36, 96 L ed 48, 72 S Ct 97 (1951); Wright v United States, 250 F2d 4 (CA DC Cir) (1957); Brown v United States, 228 F2d 286 (CA 5th Cir) (1955); Schaffer v United States, 221 F2d 17 (CA 5th Cir) (1955). The rule we espoused is predicated on these cases. We did not disagree with the holdings in these cases then, nor do we now. It is suggested, however, that another and additional question is involved herein which warrants development.

In United States v Carignan, supra, the Supreme Court of the United States held that it was error for the trial court to refuse to permit the defendant to take the stand and testify in the absence of the jury to facts believed to indicate the involuntary character of his confession. A close examination of the opinion in the Supreme Court, and of the opinion below by the United States Court of Appeals for the Ninth

---

[1] Cf. United States v Odenweller, 13 USCMA 71, 32 CMR 71.

Circuit in the same case,[2] fails to reveal that Carignan testified at his trial. The strong, if not inescapable, implication is that he did not.

The United States Court of Appeals for the District of Columbia Circuit follows the same rule as this Court, as evidenced by the cases cited hereinbefore. That is, a defendant is entitled to testify in the absence of the jury as to the circumstances under which he had confessed, as a matter of right. See Wright v United States, supra, and the cases therein cited. Tyler v United States, supra, was decided by that same court just five days before the Supreme Court's decision in *Carignan*. *Tyler* was a conviction of murder with a sentence of death, and the United States Court of Appeals for the District of Columbia Circuit had an identical question before it as confronts us here. The defendant in that case testified, in the presence of the jury, that police were "banging" him, slapped him in the face and broke a tooth, and twisted the handcuffs on his wrists; that he had no food, water or cigarettes; that one officer made intimations that members of his family might be arrested; and other acts of mistreatment which caused him to confess. There was much evidence in direct contradiction of Tyler's testimony. In that case, the court said:

"The first point concerns the failure of the trial judge to hold a preliminary hearing, *without the jury's presence*, as to the voluntary nature of the written confession. This seems to have resulted from a misunderstanding between court and counsel. . . . However that may be, the judge did defer a reading or view of the writing to the jury until after all evidence from *both* sides was received upon the question. . . . This evidence developed a definite conflict as to whether the confession was voluntary. Therefore, it became necessary that the court submit final determination of the issue to the jury. McAffee v United States, 1940, 72 App DC 60, 111 F2d 199, certiorari denied, 1940, 310 US 643, 60 S Ct 1094, 84

L ed 1410; Catoe v United States, 1942, 76 US App DC 292, 131 F2d 16. This was done under proper instructions in the court's charge. . . . Although the usual procedure of a preliminary inquiry by the judge was not followed, still, in view of the issue which developed, it finally turned out that the matter had to be heard and determined by the jury. Obviously, therefore, no harm was done by the fact that the evidence was heard in the first instance before the jury. Clearly, the defendant suffered no prejudice, for a preliminary hearing would have had exactly the same result." [193 F2d 24, 28.]

It should be noted, further, that on March 24, 1952, a writ of certiorari was denied by the Supreme Court in the *Tyler* case. See 343 US 908, 96 L ed 1326, 72 S Ct 639. This, of course, was *subsequent* to the Supreme Court's decision in *Carignan.*

Recently, the United States Court of Appeals for the District of Columbia Circuit again considered the question of an out-of-court hearing as to the voluntary character of a confession. This was in Bray v United States, supra, in which it was held that the failure to hold such hearing was prejudicial error. A reading of this recent decision in connection with Tyler v United States, supra, will throw considerable light on the subject and disclose the logic upon which holdings in this area should be based. In *Bray* it was noted:

"This case is distinguishable from Tyler v United States, 90 US App DC 2, 193 F2d 24 (1951), cert denied 343 US 908, 72 S Ct 639, 96 L ed 1326 (1952). There the defendant chose to take the stand before the jury. . . . Thus the evidence that would have been offered by both sides at the hearing, had it been held, was spread across the record. We could therefore determine that the confession was not involuntary as a matter of law, and that the issue of voluntariness was properly submitted to the jury.

"Here, in sharp contrast, appellant exercised his constitutional right not

---

[2] Carignan v United States, 185 F2d 954 (CA9th Cir) (1950).

to testify. He was not required to waive that right in order to obtain a determination by the court. But because he did not testify, the court did not explore the issue of voluntariness and, in particular, the matters relating to appellant's physical and mental condition during the interrogation. We cannot say what the result of such inquiry would have been. Hence we cannot say the refusal to conduct it was not prejudicial." [306 F2d at page 750.]

The reasoning of the United States Court of Appeals for the District of Columbia Circuit in the two cases above-mentioned is unassailable. Neither of those cases is in conflict with anything in this area heretofore held by this Court. They are in accordance with the holdings of the Supreme Court and with the language, herein quoted, of the Chief Judge in United States v Young, supra.

In the case before us, the appellant testified fully and completely as to all facts surrounding the giving of his confession. As has been indicated, that evidence is "spread across the record," and the same expressly excludes the possibility of any other basis for objection to the confession's admissibility.[3] The question of admissibility as a matter of law can be determined on the only ground—denial of counsel—which appellant asserted or desired to assert. That factual issue was fully and properly submitted to the court-martial for its decision. In the event of a rehearing, an out-of-court hearing would be held. The identical evidence would be presented therein, and then repeated in open court. The practical situation is that, in the event of a rehearing, as to this particular issue the case conceivably would be tried on the record now before us, by way of stipulation or due to the unavailability of the witnesses. It would be absurd to return this case for rehearing in order to repeat fruitlessly what has already been done.

Under the circumstances, therefore, there is no prejudice to the substantial rights of the appellant as contemplated by Article 59, Uniform Code of Military Justice, supra.[4]

We now turn to consideration of the second granted issue. As was indicated at the outset, it inquires whether the staff judge advocate erred in informing the convening authority no real issue of denial of counsel was raised.

An examination of the post-trial review submitted by the staff judge advocate to the convening authority discloses that the same did, indeed, contain the sentence:

". . . In the light of all the testimony in context, it does not appear that any real issue of denial of counsel or admissibility of the statement was presented to the court."

Following the quoted comment by the staff judge advocate appeared a citation of United States v Kantner, 11 USCMA 201, 29 CMR 17. Reference to the opinion in *Kantner*, supra, reveals a factual situation remarkably similar to the instant case. Chief Judge Quinn there stated for the majority:

"An accused has a right to consult with counsel, and law enforcement agents cannot deprive him of that right. If the accused contends he was deprived of or misinformed of his right to consult with counsel, there must be evidence to support the contention. Here, there is a fatal gap. The statement of a desire to talk to counsel is present, but there is no proof of a denial of the opportunity." [11 USCMA at page 204.]

Had the staff judge advocate included only the questioned sentence in his advice to the convening authority in the case at bar, and nothing more on the subject, this issue could possibly pose a problem. However, perusal of the review indicates that the staff judge advocate consumed some four legal-size pages of single-spaced typing in dis-

<hr>

[3] Cf. United States v Dicario, 8 USCMA 353, 24 CMR 163.

[4] Cf. Crosby v United States, — F2d —— (CA DC Cir), decided December 20, 1962. There the conviction was reversed, but it is to be noted the defendant did not testify at his trial and no issue of voluntariness was submitted to the jury.

cussing the issue of denial of counsel and an out-of-court hearing. The very last sentence of that discussion is the sentence included in this issue. Theretofore he had quoted from the record at very considerable length and cited and discussed numerous authorities on the questions involved. The review on this issue is full and complete and, as stated by the staff judge advocate, his conclusion is based upon "all the testimony in context." The sentence of which complaint is made is solely, completely, and patently the opinion of the staff judge advocate.

Article 61, Uniform Code of Military Justice, 10 USC § 861, requires such an advisor to "submit his written opinion . . . to the convening authority," and in United States v Westrich, 9 USCMA 82, 25 CMR 344, Judge Ferguson set forth this Court's view that the opinion of the staff judge advocate is essential to the validity of a post-trial advice. See United States v Flemings, 8 USCMA 729, 25 CMR 233; United States v Fields, 9 USCMA 70, 25 CMR 332. We find no error in the action of the staff judge advocate in including such sentence in his review.

The decision of the board of review is affirmed.

QUINN, Chief Judge (concurring in the result):

We all agree the law officer erred in denying defense counsel's request for an out-of-court hearing on the admission of the accused's pretrial statement. The question then is whether the error presents a fair risk that the accused was prejudiced by the erroneous ruling. It is at this point that we disagree.

The principal opinion implies that if accused accepts the adverse ruling and presents all the evidence on the issue available to him, he cannot be prejudiced. This broad implication is, in my opinion, contrary to United States v Lock, 13 USCMA 611, 33 CMR 143. There we held that the ruling is prejudicial if, in the course of the hearing on admissibility of the pretrial statement, evidence material to that issue but irrelevant to the merits is intro-

duced, which could reasonably prejudice the accused in the court-martial's deliberations on his guilt or innocence. The refusal to hold an out-of-court hearing may also be prejudicial if the accused testifies on the admissibility issue, and again testifies on the merits. In that situation, the court-martial's determination that the accused lied, or was mistaken in regard to the preliminary question, might tend to lead it to conclude that he also lied or was mistaken in his testimony on the merits. Consequently, I disagree with the implications of the principal opinion. However, I agree with the conclusion that here the law officer's ruling did not prejudice the accused.

Nothing at the hearing related to anything but the alleged claim of a request to consult with counsel. Cf. United States v Lock, supra. The accused did not testify or present other evidence on the merits, so there is no possibility that the court-martial's evaluation of what he said on the admissibility issue would affect its consideration of the evidence relating to the merits, or even the sentence. I, therefore, join in affirming the decision of the board of review.

FERGUSON, Judge (dissenting):

I dissent.

While, in view of our differing positions, no law is made here, I believe that in sustaining the arbitrary and capricious action of the law officer in this case, the principal opinion not only ignores the salutary holdings of this Court in United States v Cates, 9 USCMA 480, 26 CMR 260; United States v Young, 10 USCMA 249, 27 CMR 323; and United States v Lock, 13 USCMA 611, 33 CMR 143, but does so by placing a premium on the ability of a defense counsel to deceive and outface the law officer in order to obtain a later reversal, when he may in fact have been completely unable to raise any issue concerning the confession in an out-of-court hearing. These considerations may serve to satisfy others, but I find the arguments which led us in our earlier decisions to reject the proposition now advanced still suffi-

**607**

ciently rational to adhere to the principle enunciated therein.

As the majority indicates, the evidence raises an issue concerning whether accused's confession was admissible. On cross-examination, Agent Casaus admitted that the accused asked "if he could have legal counsel in a case like this and I answered, 'Yes.'" Casaus went on to declare, however, that "this affirmative answer apparently satisfied" accused "and we proceeded with the interview." According to accused, he twice requested counsel. The initial occasion was during an authorized search of his room, at which time—in the presence of his Commanding Officer, Major Long, and his First Sergeant, Sergeant Chitty—accused "asked him if I could have legal counsel . . . immediately after he read Article 31 to me." There wasn't any reply to this," and Agent Casaus simply continued to examine the contents of the room.

After the search was completed, accused was taken to OSI headquarters. There, Casaus again advised him of his rights under Code, supra, Article 31, and asked that he write out a statement. Accused "told him . . . that I couldn't write anything for him without the help of a lawyer." Casaus "brushed over" it, saying, "'It wasn't needed,' or something, and we continued on talking." Accused's "intent in asking was for counsel."

That such testimony places before the court-martial the question whether accused was denied his right to counsel is clearly established. As was stated in United States v Brown, 13 USCMA 14, 32 CMR 14, at page 17:

"The law is clear under the cases previously cited that when an accused or suspect requests such information it is error to misadvise him of his right to consult with an attorney and 'force him to submit to questioning . . . without a lawyer.' *Gunnels,* supra, at page 135. *If the accused seeks to exercise his right to consult with counsel during interrogation he must be afforded the opportunity to do so.*" [Emphasis partially supplied.]

Simply ignoring accused's request or passing it off as unnecessary surely does not afford the opportunity for consultation which we declared he must have. There is no need for him "to prate some magic formula." United States v Powell, 13 USCMA 364, 367, 32 CMR 364, 367. We "look to the substance of the matter and determine whether he made known his inclination." *Powell,* supra, at page 367. So viewed, accused's testimony makes apparent his communication of a desire to seek legal advice, and denial of that right. Indeed, even Casaus' own statement admits that accused inquired concerning his entitlement to counsel, although he goes on to declare "this affirmative answer apparently satisfied him."

In like manner, as the principal opinion concedes, there is no doubt that the law officer, Major Shank, arbitrarily refused to accord the accused an out-of-court hearing on this issue and, in practical effect, compelled him to choose either to have the question heard before the jury or not at all. The prosecution itself joined the defense in attempting to have it granted the right to be heard before the law officer alone but was even refused the opportunity to obtain and present legal authorities in support of that position.

That the accused is entitled to such a hearing when an issue is raised concerning the admissibility of his pretrial statement is established beyond cavil by our prior cases, to which I now turn.

In United States v Cates, supra, we were faced with the refusal of a law officer to permit counsel to be heard out-of-court on the issue whether accused had been denied the right to consult with counsel during his interrogation by criminal investigators. Considering the contention that this was prejudicially erroneous, the Chief Judge and I declared, at page 482:

"There are some decisions to the effect that the failure to hold the preliminary hearing outside the hearing of the jury is not prejudicial if the evidence is sufficient to support the trial judge's ruling admitting the pretrial statement into evidence.

Tyler v United States, 193 F2d 24 (CA DC Cir) (1951); Tooisgah v United States, 137 F2d 713 (CA10th Cir) (1943); Ramsey v United States, 33 F2d 699 (CA8th Cir) (1929). *But the later and better rule is that the duty to hold such a hearing is mandatory and the refusal to hold it when requested is reversible error.* United States v Carignan, 342 US 36, 72 S Ct 97, 96 L ed 48; Wright v United States, 250 F2d 4 (CA DC Cir) (1957); Schaffer v United States, 221 F2d 17 (CA 5th Cir) (1955); Brown v United States, 228 F2d 286 (CA5th Cir) (1955)." [Emphasis supplied.]

In United States v Young, supra, the same question was before us. There, the law officer refused to allow the defense in an out-of-court hearing to complete presentation of evidence designed to establish that accused's confession was obtained without proper warning in a military investigation. Nevertheless, the defense continued before the jury *and presented all the evidence he had on the question* to the fact finders. Once more, we reversed, the Chief Judge stating, at page 251:

"In United States v Cates, 9 USCMA 480, 26 CMR 260, we held it is error to deny the accused's request for a preliminary out-of-court hearing to determine the admissibility of a pretrial statement made by him. See also United States v Carignan, 342 US 36, 38, 72 S Ct 97, 96 L ed 48; United States v Cooper, 2 USCMA 333, 8 CMR 133. *The question then is whether an issue of admissibility is presented by the record of trial. If there is none, the accused obviously was not harmed by the failure to hold the preliminary hearing. In our opinion, there is an issue of admissibility.*" [Emphasis supplied.]

Most recently, in United States v Lock, supra, we re-examined the problem and further discussed the *Young* case. Of it, we said:

"In the *Young* case we said that if there was no 'issue of admissibility' as to the pretrial·statement, 'the accused obviously was not harmed' by the law officer's denial of his request for an out-of-court hearing. *The statement was made after a recital of the evidence, from which it clearly appeared that, other than a difference between the accused's version of the circumstances immediately surrounding his interrogation and that of the agents, nothing was adduced which could prejudice the court-martial against the accused. Consequently, unless the difference in the two accounts of the interrogation presented what we described as an 'issue of admissibility,' the accused was not harmed by the denial of his request for an out-of-court hearing.* We concluded that such an issue was present. *Had that issue been decided by the law officer in an out-of-court hearing, the defense might have elected not to re-present the issue before the court-martial. The law officer's ruling prevented the defense from making that election. Accordingly, we held that denial of the requested out-of-court hearing was prejudicial error.*" [Emphasis partially supplied.]

From the foregoing, it will be seen that we have heretofore held it prejudicial error to deny an accused the right to present evidence and contest the admissibility of his confession in an out-of-court hearing if, as in this case, an issue is raised concerning its being received. As we noted in *Cates*, supra, which involved, as here, a contest over whether accused was denied counsel, "the duty to hold such a hearing *is mandatory and the refusal to hold it when requested is reversible error.*" (Emphasis supplied.) The defense may wish to follow this course in order "to keep evidence material to the issue of voluntariness, but of possible disadvantage to him, away from the court members." United States v Dicario, 8 USCMA 353, 359, 24 CMR 163, 169. Indeed, the Court commended counsel for doing just that in United States v Goard, 13 USCMA 588, 33 CMR 120, when it was necessary to launch a strong attack upon accused's commander in connection with contesting the voluntariness of his confession. And if accused succeeds in having the

law officer rule in his favor, he of course will have prevented the court members from ever learning of the existence of the confession. The principle, therefore, is founded on reason, causes no extended delay in the proceedings, and permits a resolution of the confession problem by which the rights of all parties may be satisfactorily resolved.

The facts of this case demand application of the rule. They are precisely the same as in United States v Cates, supra, for here, too, a strong issue was raised concerning whether accused was denied counsel. Yet, the law officer would not entertain the defense request for the necessary hearing, even though counsel fully disclosed what he had in mind and indicated a desire to raise the question before the law officer alone. Indeed, even the prosecution sought to have the defense request granted but was summarily brushed aside. Thus, the accused was clearly denied the opportunity to litigate the issue before the law officer alone and was required to adduce proof and argue before the court-martial the question whether Casaus had ignored his demand for counsel. And, as recently as Lock, supra, we noted that failure to allow the defendant the right so to elect his forum was prejudicial error.

Turning to the rationale of the principal opinion, it is obvious that its reasoning at once goes astray in relying on those Federal cases whose holdings we expressly rejected in United States v Cates, supra, in favor of "the later and better rule," as evidenced by the following language in United States v Carignan, 342 US 36, 96 L ed 48, 72 S Ct 97, at page 38:

"The United States concedes . . . that the better practice, when admissibility of a confession is in issue, is for the judge to hear a defendant's offered testimony in the absence of the jury as to the surrounding facts. . . . *We think it clear that this defendant was entitled to such an opportunity to testify.* . . . *Such evidence would be pertinent to the inquiry on admissibility and might be material and determinative.* The re-

fusal to admit the testimony was reversible error." [Emphasis supplied.]

True it is that Tyler v United States, 193 F2d 24 (CA DC Cir) (1951), supports the result which the Court now reaches, but that case is not only contrary to United States v Carignan, supra, but was deliberately noted and discarded by us as authority in favor of the Carignan rule. And, contrary to the implication in the principal opinion, we were and are sufficiently acquainted with Tyler to be aware that it opposed the position which we took in Cates, supra. We did not "inadvisably" include it in "that list" set forth in our opinion.

After relying on a principle which the Court has thrice weighed and found wanting, it is amazingly declared that the Court nevertheless fully adheres to our decisions in the Cates and Young cases. Nothing is really said as to the former, but it is sought to explain the latter away on the facts by declaring that, in it, "the law officer interrupted the testimony of the accused; refused to permit him to complete his testimony [out-of-court]; and, over objection of accused, the hearing was conducted in the court members' presence." In the instant case, of course, the accused was, despite proper request, not permitted to testify out-of-court at all, and the train of thought which would find prejudicial error when a law officer interrupts his testimony but none when he refuses to hear the evidence at all simply escapes me. Rather, under the latter circumstance, I would conclude that a stronger case for reversal is made out.

The truth of the matter is that the case now before us cannot be affirmed without totally impugning our former holdings. The arguments for overturning Cates, Young, and Lock, all supra, are little more than a rehash of those which were presented in the separate opinions of Judge Latimer in the first two cases. They seem no more persuasive to me now than when we rejected them before. But, even if the rule be now adopted that denial of an out-of-court hearing on the admissibility of a confession is not prejudicially erroneous if all the evidence is

actually presented before the court-martial, this case still must be reversed.

As the principal opinion states, accused's Commander, Major Long, and his First Sergeant, Sergeant Chitty, were both present when accused allegedly requested counsel. Although each could have shed light on the transaction, neither was called as a witness before the court-martial. In view of the fact that Long was the accuser and Chitty his enlisted *alter ego*, it is understandable that reasons may have existed which justified defense counsel in refusing to risk their testimony before the fact finders, while he may have been willing to do so before the law officer alone. Thus, contrary to the assertion of the principal opinion, "all the evidence" on the question was not presented in open court and, under its holding on the law, a rehearing should still be ordered. I would, however, do so solely on the basis of the rule which we have uniformly heretofore followed.

In sum, then, I believe the correct principle to be that an accused is entitled as a matter of right to an out-of-court hearing regarding his confession if, as in this case, an issue is raised concerning its admissibility. And despite the position taken in the concurring opinion, prejudice follows when he is made to testify in open court, to argue the issues there, and to be deprived of his privilege of having the military judge alone rule finally on the question. Cf. United States v Cates, supra; United States v Young, supra. In this case, he satisfied these conditions and made known in every possible way to the law officer his desires. Yet, that personage in the most capricious manner refused to listen either to him or to the trial counsel who, undoubtedly seeking to protect his record, likewise solicited the hearing. In good conscience, I cannot join in a position which shows such cavalier disregard for our precedents and stamps with approval the unjudicial action of this Air Force officer.

I would reverse the board of review and order a rehearing.