UNITED STATES *v.* CARIGNAN.

No. 5.   Argued October 8, 1951.—Decided November 13, 1951.

*Philip Elman* argued the cause for the United States. *Solicitor General Perlman, Assistant Attorney General McInerney, Robert S. Erdahl* and *Beatrice Rosenberg* filed a brief for the United States.

*Harold J. Butcher* argued the cause and filed a brief for respondent.

Mr. Justice Reed delivered the opinion of the Court.

Respondent Carignan was convicted in the District Court for the Territory of Alaska of first degree murder in attempting to perpetrate a rape. Alaska Compiled Laws Annotated, 1949, § 65–4–1. He was sentenced to death. The conviction was reversed by the United States Court of Appeals for the Ninth Circuit. *Carignan* v. *United States,* 185 F. 2d 954. The sole ground of the reversal was the admission of a confession obtained in a manner held to be contrary to the principles expounded by this Court in *McNabb* v. *United States,* 318 U. S. 332, and *Upshaw* v. *United States,* 335 U. S. 410.

The case is here on writ of certiorari granted on the petition of the Government. 341 U. S. 934. The question presented by the petition was whether it was error to admit at the trial respondent's confession of the mur-

der. The confession was held inadmissible because given before arrest, indictment, or commitment on the murder charge. The confession was given after respondent had been duly committed to jail, Rule 5, Federal Rules of Criminal Procedure, under a warrant which charged that he had, at a time six weeks after the murder, perpetrated an assault with intent to rape.

Respondent advances three additional issues to support the reversal of the conviction besides the above point on detention. *First.* Error, it is argued, was committed by the trial court in admitting the confession because it was obtained by secret interrogation and psychological pressure by police officers. *Second.* Further error, it is said, followed from a failure of the trial court to submit to the jury, as a question of fact, the voluntary or involuntary character of the confession. *Third.* Error occurred when the trial court refused to permit respondent to take the stand and testify in the absence of the jury to facts believed to indicate the involuntary character of the confession.[1]

The United States concedes in regard to the third issue that the better practice, when admissibility of a confession is in issue, is for the judge to hear a defendant's offered testimony in the absence of the jury as to the surrounding facts. Therefore, the Government makes no objection to the reversal of the conviction on that ground. We think it clear that this defendant was entitled to such an opportunity to testify. An involuntary confession is inadmissible. *Wilson* v. *United States*, 162 U. S. 613, 623. Such evidence would be pertinent to the inquiry on admissibility and might be material and determinative. The refusal to admit the testimony was reversible error.

---

[1] Since these issues were in controversy below, they are available to respondent as grounds for affirmance of the Court of Appeals. *Langnes* v. *Green*, 282 U. S. 531, 535, 538; *United States* v. *Curtiss-Wright Corp.*, 299 U. S. 304, 330.

As this error makes necessary a new examination into the voluntary character of the confession, there is no need now to pursue on this record the first and second issues brought forward by respondent, except to say that the facts in this record surrounding the giving of the confession do not necessarily establish coercion, physical or psychological, so as to render the confession inadmissible. The evidence on the new trial will determine the necessity for or character of instructions to the jury on the weight to be accorded the confession, if it is admitted in evidence. Cf. *United States* v. *Lustig,* 163 F. 2d 85, 88–89. *McNabb* v. *United States,* 318 U. S. 332, 338, note 5. So long as no coercive methods by threats or inducements to confess are employed, constitutional requirements do not forbid police examination in private of those in lawful custody or the use as evidence of information voluntarily given.[2]

The following summary of the uncontradicted facts discloses the circumstances leading to the confession. Respondent Carignan was detained by the Anchorage police in connection with the subsequent assault case from about 11 a. m., Friday, September 16, 1949. He was identified in a line-up by the victim, and confessed to the assault. Around 4 p. m. on the same day he was arrested and duly committed for the assault. His trial on the assault charge took place subsequent to this confession.

During the time between his detention and commitment for the assault, respondent was questioned by the police about the murder which was the basis of the conviction now under review. A witness who had seen the man involved in the murder and his victim together at the scene of the crime was brought to the police station during this time. From a line-up he picked out respond-

---

[2] *Ziang Sung Wan* v. *United States,* 266 U. S. 1, 14; *Lisenba* v. *California,* 314 U. S. 219, 239; *McNabb* v. *United States,* 318 U. S. 332, 346. Cf. *Hardy* v. *United States,* 186 U. S. 224, 228.

ent Carignan as one appearing to be the person that he saw on that occasion. Carignan did not give any information about his activities on the day the murder was committed.

The night of Friday, September 16, Carignan was lodged in the city jail. The next morning, Saturday, Herring, the United States Marshal, undertook to question respondent in regard to the earlier crime of murder. No evidence appears of violence, of persistent questioning, or of deprivation of food or rest. Respondent was told that he did not have to make a statement, and that no promises could be made to him one way or another. There were pictures of Christ and of various saints on the walls of the office in which the conversation occurred. The Marshal evidently suggested to him that his Maker might think more of him if he told the truth about the crime. The evidence also shows that the Marshal told Carignan that he, the Marshal, had been in an orphan asylum as a youth, as had Carignan. On respondent's request a priest was called. The accused talked to the priest alone for some time and later told the Marshal he would give him a statement. After his return to the jail about 5 p. m. on Saturday, he was left undisturbed.

On Sunday he was not questioned, and on Monday morning the Marshal again took respondent out of jail and into the grand jury room in the courthouse. Upon the Marshal's inquiry if he had any statement to make, respondent answered that he had but that he wished to see the priest first.

After talking to the priest again for some time, he gave the Marshal a written statement. The statement was noncommittal as to the murder charge. Two other police officers who were with the Marshal and Carignan then suggested that perhaps Carignan would rather talk to the Marshal alone. They withdrew. The Marshal

told Carignan, in response to an inquiry, that he had been around that court for twenty-seven years and that during that time "there had been no hanging, what would happen to him I couldn't promise him or anyone else." There was also some talk about McNeil Island, the location of the nearest federal penitentiary, and the Marshal said, in reply to a question of Carignan's, that he, the Marshal, "had known men that had been there and learned a trade and that made something of their lives." After a few moments' further conversation Carignan completed the written statement that was later put in evidence. It then admitted the killing.

Whether involuntary confessions are excluded from federal criminal trials on the ground of a violation of the Fifth Amendment's protection against self-incrimination,[3] or from a rule that forced confessions are untrustworthy,[4] these uncontradicted facts do not bar this confession as a matter of law. The constitutional test for admission of an accused's confession in federal courts for a long time has been whether it was made "freely, voluntarily and without compulsion or inducement of any sort."[5] However, this Court in recent years has enforced a judicially created federal rule of evidence, to which the label *"McNabb* rule" has been applied, that confessions shall be excluded if obtained during "illegal detention due to failure promptly to carry a prisoner before a committing magistrate, whether or not the 'confession is the result of torture, physical or psychological.' "[6] Violation of the *McNabb* rule, in the view of the Court of Appeals,

---

[3] *Bram* v. *United States,* 168 U. S. 532, 542; *Powers* v. *United States,* 223 U. S. 303, 313.

[4] Wigmore, Evidence (1940 ed.), § 822. Cf. *Ziang Sung Wan* v. *United States,* 266 U. S. 1, 14.

[5] *Wilson* v. *United States,* 162 U. S. 613, 623.

[6] *Upshaw* v. *United States,* 335 U. S. 410, 413; *McNabb* v. *United States,* 318 U. S. 332.

not the assertedly involuntary character of the confession, caused that court to reverse the conviction.[7] Our problem in this review is whether the *McNabb* rule covers this confession or, if not, whether that rule of evidence should now be judicially extended to these facts.

By *United States* v. *Mitchell*, 322 U. S. 65, 70–71, this Court decided that the *McNabb* rule was not intended as a penalty or sanction for violation of R. S. D. C. § 397, a commitment statute. The same conclusion applies to Rule 5, Federal Rules of Criminal Procedure.[8] This rule applies to Alaska. Rule 54 (a). See *Upshaw* v.

---

[7] *Carignan* v. *United States*, 185 F. 2d 954:

Healy, Circuit Judge:

"What the court has to decide is whether the circumstances outlined were such as to bring the case within the spirit and intent of Rule 5 and the holding of the McNabb decision, supra, as further expounded in Upshaw v. United States, 335 U. S. 410, . . . .[4]

"[4] In the view of the writer of this opinion something approaching psychological pressure, not unmixed with deceit, contributed to the extraction of the confession. Since the majority are of a contrary opinion this possible aspect has not been given weight in the decision to reverse." P. 958.

Bone, Circuit Judge:

"However, I emphasize that my concurrence rests *solely* upon the fact that appellant was not arraigned prior to being interrogated by the Marshal and prior to the making of the confession. The evidence in this case convinces me that the confession was freely made and was not the product of any form of promises or inducement that would or should vitiate it." P. 961.

See also Pope, Circuit Judge, dissenting, p. 962.

[8] Federal Rules of Criminal Procedure:

"RULE 5. PROCEEDINGS BEFORE THE COMMISSIONER.

"(a) APPEARANCE BEFORE THE COMMISSIONER. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a

*United States,* 335 U. S. 410, 411.' Mitchell's confession, made before commitment, but also before his detention had been illegally prolonged, was admitted as evidence because it was not elicited "through illegality." The admission, therefore, was not "use by the Government of the fruits of wrongdoing by its officers." *Upshaw* v. *United States, supra,* 413.[9]

The *McNabb* rule has been stated thus:

> ". . . that a confession is inadmissible if made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate, whether or not the 'confession is the result of torture, physical or psychological . . . .' " *Upshaw* v. *United States,* 335 U. S. at 413.

One cannot say that this record justifies characterization of this confession as given during unlawful detention. Rule 5, Federal Rules of Criminal Procedure, does not apply in terms, because Carignan was neither arrested for nor charged with the murder when the confession to that crime was made. He had been arrested and committed for the assault perpetrated six weeks after

person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith.

"(b) STATEMENT BY THE COMMISSIONER. The commissioner shall inform the defendant of the complaint against him, of his right to retain counsel and of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. The commissioner shall allow the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail as provided in these rules."

[9] In the *Mitchell* case, defendant's confession was given at the police station before commitment, a few minutes after two policemen had jailed him following his arrest on a charge of housebreaking and larceny. For the purpose of aiding in clearing up a series of housebreakings, Mitchell's appearance for commitment was illegally postponed for eight days.

the murder. His detention, therefore, was legal. Further, before the confession, there was basis for no more than a strong suspicion that Carignan was the murderer. That suspicion arose from a doubtful identification by a person who had in passing seen a man resembling the respondent at the scene of the murder and from a similarity of circumstances between the murder and the assault.[10] The police could hardly be expected to make a murder charge on such uncertainties without further inquiry and investigation. This case falls outside the reason for the rule, *i. e.*, to abolish

---

[10] The weakness of this evidence is shown by the record.

"Q. Now, at any later time, Mr. Keith, were you called upon to identify anyone that resembled the person that you saw, the male person in the grass that night?

"A. I was taken to the police station and viewed the line-up.

"Q. Do you recall how many were in that line-up?

"A. There was either four or five, I don't exactly recollect.

"Q. Did you pick out some person that appeared to be the person that you saw on this particular occasion?

"A. I did.

"Q. Do you see anyone in the courtroom today that resembles the party that you saw that night in question?

"A. I do.

"Q. Will you point him out?

"A. He is right over there." R. 120–121.

.        .        .        .        .

"Q. Now, were you able to remember the person you saw there so that when you saw him in the courtroom today you were able to recognize him as the same person?

"A. I couldn't positively swear that he is the same person." R. 128.

.        .        .        .        .

"Q. When did you next see the man whom you identified as the person you saw in the park in the grass?

"A. In the police line-up.

"Q. Did you have any difficulty recognizing him at that time?

"A. Well, no. I picked him out as looking nearer like the man that I saw there than any man I have seen." R. 130.

unlawful detention. Such detention was thought to give opportunity for improper pressure by police before the accused had the benefit of the statement by the commissioner. Rule 5 (b), *supra*, note 8. *Upshaw* v. *United States, supra,* 414; *McNabb* v. *United States, supra,* 344. Carignan had received that information at his commitment for the assault.

Another extension of the *McNabb* rule would accentuate the shift of the inquiry as to admissibility from the voluntariness of the confession to the legality of the arrest and restraint. Complete protection is afforded the civil rights of an accused who makes an involuntary confession or statement when such confession must be excluded by the judge or disregarded by the jury upon proof that it is not voluntary. Such a just and merciful rule preserves the rights of accused and society alike. It does not sacrifice justice to sentimentality. An extension of a mechanical rule based on the time of a confession would not be a helpful addition to the rules of criminal evidence. We decline to extend the *McNabb* fixed rule of exclusion to statements to police or wardens concerning other crimes while prisoners are legally in detention on criminal charges.

The decision of the Court of Appeals is modified and, as modified by this opinion, the judgment is

*Affirmed.*

Mr. Justice Minton took no part in the consideration or decision of this case.

Mr. Justice Douglas, with whom Mr. Justice Black and Mr. Justice Frankfurter join, concurring.

I agree that the judgment of conviction was properly set aside. But my reason strikes deeper than the one on which the Court rests its opinion. There are time-honored police methods for obtaining confessions from an

accused. One is detention without arraignment, the problem we dealt with in *McNabb v. United States,* 318 U. S. 332. Then the accused is under the exclusive control of the police, subject to their mercy, and beyond the reach of counsel or of friends. What happens behind doors that are opened and closed at the sole discretion of the police is a black chapter in every country—the free as well as the despotic, the modern as well as the ancient. In the *McNabb* case we tried to rid the federal system of those breeding grounds for coerced confessions.

Another time-honored police method for obtaining confessions is to arrest a man on one charge (often a minor one) and use his detention for investigating a wholly different crime. This is an easy short cut for the police. How convenient it is to make detention the vehicle of investigation! Then the police can have access to the prisoner day and night. Arraignment for one crime gives some protection. But when it is a pretense or used as the device for breaking the will of the prisoner on long, relentless, or repeated questionings, it is abhorrent. We should free the federal system of that disreputable practice which has honeycombed the municipal police system in this country.* We should make illegal such a perversion of a "legal" detention.

The rule I propose would, of course, reduce the "efficiency" of the police. But so do the requirements for arraignment, the prohibition against coerced confessions, the right to bail, the jury trial, and most of our other procedural safeguards. We in this country, however early made the choice—that the dignity and privacy o: the individual were worth more to society than an all-powerful police.

*See, for example, 29 City Club Bulletin of Portland, Oregon, No 7, June 18, 1948.

We are framing here a rule of evidence for criminal trials in the federal courts. That rule must be drawn in light not of the facts of the particular case but of the system which the particular case reflects. Hence, the fact that the charge on which this respondent was arraigned was not a minor one nor one easily conceived by the police is immaterial. The rule of evidence we announce today gives sanction to a police practice which makes detention the means of investigation. Therein lies its vice. Hence, we do not reach the question whether a confession so obtained violates the Fifth Amendment.