**UNITED STATES of America,**
**Plaintiff,**

v.

**Ralph Earnest TUPPER and Myron**
**Ernest Williams, Defendants.**

**No. 20297.**

United States District Court
W. D. Missouri, W. D.

Dec. 17, 1958.

Edward L. Scheufler, U. S. Atty., Clark A. Ridpath, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Barnes Griffith, Kansas City, Mo., for defendant Tupper.

Robert M. Duboc, Kansas City, Mo., for defendant Williams.

RIDGE, District Judge.

Under federal criminal procedure as established by the Supreme Court in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, the verdicts of guilty returned by the jury against defendants herein cannot be allowed to stand, depending as they do on the ex-judicial statements made by defendants, if it is clearly established that

such statements were taken pursuant to a working arrangement between federal officers and state police which made possible a violation of Rule 5, Federal Rules of Criminal Procedure, 18 U.S.C.A. "The fact that the federal officers themselves were not formally guilty of illegal conduct does not affect the admissibility of the evidence which they secured improperly through collaboration with state officers." Anderson v. United States, 318 U.S. 350, 356, 63 S.Ct. 599, 602, 87 L. Ed. 829.

Therefore, the question for decision is whether the confessions of defendants, introduced in evidence at the trial of these cases, were taken under circumstances that clearly reveal cooperation between members of the Kansas City, Missouri, Police Department and federal officials, so that the only inference to be made therefrom is that they were obtained during a period of unlawful detention for which federal officers are chargeable.

The following undisputed facts appear of record herein. Defendants were arrested by members of the Kansas City, Missouri, Police Department on October 11, 1958. Such arrest was a lawful one. Thereafter, defendants were carried to the Kansas City, Missouri, Police Department where they were booked: "Hold for burglary, auto theft, Gibson, Postal Authorities and Sergeant William Kirschner." A search of defendants in connection with such arrest produced the 12 money orders, the subject of the information filed against defendants.

The next morning, Sunday, October 12th, defendants were interrogated by Sergeant Graham, of the Kansas City, Missouri, Police Department. It is Sgt. Graham's testimony that the Kansas City Police Officers cooperate with the Federal Bureau of Investigation as much as possible and always call suspects of federal criminal violations to the attention of the FBI. If a suspect is arrested and a federal offense is disclosed, it is called to the attention of the member of the Federal Bureau of Investigation who is generally present at Police Headquarters every weekday morning, attending the show-up. It is not the general practice of the Kansas City, Missouri, Police Department to file a lesser state charge against an arrested suspect when he is also suspected of committing a greater, federal offense. The Kansas City Police Officers consider a federal charge to be greater than a state charge, and suspects of federal offenses are customarily released to the jurisdiction of federal officers for prosecution thereon. During his examination of defendants, Sgt. Graham undertook to establish the facts or foundation necessary for a possible federal offense. That is what he undertook to do in respect to the twelve money orders found in the possession of the defendants, because defendant Williams stated to him that he had purchased such money orders in Minneapolis, Minnesota.

After the questioning of defendants on Sunday, October 12th, Sgt. Graham sent out an all-station teletype inquiry concerning the defendants. Thereafter, on October 14th, Sgt. Graham called the local office of the Federal Bureau of Investigation and informed that office concerning defendants' suspected violation of a federal law in connection with such money orders. On that same morning, he met Agent Alvey, a member of the FBI, in the corridors of the local Police Department and stated to him: "I called your office this morning, telling about Williams and Tupper," and he asked Agent Alvey: "Can you handle it?" Agent Alvey stated to Sgt. Graham: "Well, I will see what it is about." Agent Alvey then called the local office of the FBI and told them: "I've got these two boys over here and I am going to interview them. In case you assign somebody else the case, tell them I am handling it." Between 10:40 A.M. and 11:25 A.M. on that day, Agent Alvey, in the presence of local police officers, first questioned the defendant Williams concerning the possession of an automobile which it was suspected had been stolen and transported in interstate commerce. No statement was taken from

Williams at that time, as the information given by him in regard to such automobile was checked and the facts revealed no federal offense in respect thereto.

On the afternoon of October 14th, Agent Alvey, in the presence of local police officers, questioned the defendant Tupper, from 4:20 P.M. to 6:00 P.M., and a statement, Exhibit 17, was taken in regard to the forging and cashing of a $50 money order in Des Moines, Iowa. The signature of Tupper to said statement was witnessed by federal officers, and Sgt. Graham of the Kansas City, Missouri, Police Department. The reason for taking such statement was that the facts in connection therewith appeared to be a federal offense and Agent Alvey assumed that there might be a prosecution thereof in the District of Iowa.

On the next day, October 15th, Sergeant Fred Ennis, of the General Assignment Unit of the Kansas City, Missouri, Police Department, telephoned Agent Alvey at his office and said: "What are you fellows going to do with them?" (meaning the defendants). Agent Alvey replied: "Fred, we just found out about this yesterday * * *. My office in Minneapolis is checking on these things." Sgt. Ennis then replied: "Well, we are checking on this, also, but we are going to have to turn them loose pretty soon." Agent Alvey then told Sgt. Ennis: "Fred, you know the rules, you can't hold them for us and if you've got to turn them loose, turn them loose." Sgt. Ennis replied: "We are going to go on checking, to hold them another day, or something to that effect." Agent Alvey told Sgt. Ennis: "Now you can either turn them loose and then we will look for them after you turn them loose, but you know you can't hold them for us."

However, subsequent to said conversation, Agent Alvey then returned to the Police Holdover and again questioned the defendants. The defendant Williams was questioned from 2:50 P.M. to 4:05 P.M. on October 14th, and a written statement taken from him, in which, among other things, he admitted transporting from Minneapolis, Minnesota, to Kansas City, Missouri, the money orders taken from him, which he knew to be forged. The statement so taken was witnessed by Agent Alvey, and Sgts. Graham and Ennis, of the Kansas City, Missouri, Police Department.

On the same afternoon, the defendant Tupper was again questioned by Agent Alvey, from 4:08 P.M. to 4:40 P.M., and another written statement taken from him, in which, among other things, the defendant Tupper stated that he had transported from Minneapolis, Minnesota, to Kansas City, Missouri, the money orders taken from him at the time of his arrest, and that he knew the same to have been forged. The signature of Tupper to that statement was witnessed by Agent Alvey and Sgt. Graham.

After the above statements were so taken from defendants, they were detained in custody by the Kansas City, Missouri, Police Department and were not released to federal officers until the next day, October 16th, around 2:00 P. M., when they were taken by Sgt. Graham, at the request of the local Federal Bureau of Investigation, before the United States Commissioner for the Western District of Missouri, where a complaint was filed against defendants, charging them with the offense for which they stood trial. Agent Alvey and members of the local Police Department were at all times cognizant that defendants were being unlawfully detained, in violation of Section 544.170, V.A.M.S., and that said defendants had never been taken before a State Magistrate, nor was any charge for violation of state law lodged against them.

Relying upon McNabb v. United States, supra; Anderson v. United States, supra; Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, defendants filed a motion for acquittal at the close of all the evidence, contending that the confessions obtained from them

under the above circumstances were in violation of Rule 5(a), Federal Rules of Criminal Procedure, and that the same should, therefore, have been excluded from the evidence after the hearing held by the Court out of the presence of the jury. It is conceded a conviction could not have been obtained in the instant case without the use of said confessions, although there appears in the record sufficient corroboration of the contents of said confessions, if they had been voluntarily made by defendants while in lawful custody. Cf. United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48.

There is no claim made by defendants in this case that there was any intimidation, coercion, or maltreatment by local or federal officers, other than that which may be presumed to exist from their unlawful detention, and that the statements made by them were obtained before they were taken before the United States Commissioner as provided in Rule 5(a), supra.

It has long been a rule in respect to federal criminal prosecutions, that where a federal officer participates officially with state officers in an arrest, detention, or search, so that in substance and effect it is their joint operation, the legality of the arrest, detention and search is to be measured and determined by federal law and the fruits thereof cannot be used in evidence in a federal prosecution as it is deemed to be the undertaking exclusively of the federal officers. Anderson v. United States, supra; Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293; Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520.

The Government urges that the admissibility of the statements taken from defendants under the circumstances as above should be measured by White v. United States, 5 Cir., 200 F.2d 509; Brown v. United States, 5 Cir., 228 F.2d 286; Papworth v. United States, 5 Cir., 256 F.2d 125; and Stephenson v. United States, 6 Cir., 257 F.2d 175. It is the opinion of this Court that the admissibility of the statements introduced in evidence by the Government as primary evidence to sustain the conviction of the defendants, must be measured by Anderson v. United States, supra, and that the decisions above cited and relied upon by the Government are readily distinguishable therefrom.

In White v. United States, supra [200 F.2d 512], the trial court found that the statements there considered were taken from defendants at a time when they were "being held under a state charge of burglary and grand larceny on instructions from the Detective Bureau of the City of Birmingham, and that his (defendant's) custody was not turned over to the federal officer until shortly prior to the time that he was carried before the United States Commissioner". The circumstances under which the confession was taken from defendant in that case are more apposite to those considered by the Supreme Court in United States v. Carignan, supra, where the Court held that constitutional requirements do not forbid examination in private of those held in "lawful custody" or the use in evidence of information voluntarily given under such circumstances.

In Brown v. United States, supra [228 F.2d 289], Brown was interrogated by state officers in respect to local charges of burglary and made a confession in respect thereto. The next day, he was taken before a State Magistrate and was not turned over to federal custody until a month later. There was no evidence that the state authorities were "acting at the request, express or implied, of the federal authorities, though they did permit the defendants to be interviewed while in the County jail by two Post Office Inspectors and by two agents of the Federal Bureau of Investigation." This, after a state charge had been lodged against Brown and his codefendants. All that the federal officers did was to go "over their confessions with them, amplifying them and going into more details." The McNabb rule was held inapplicable and that case is like-

wise within the ambit of United States v. Carignan, supra.

In Papworth v. United States, supra, the confession given by the defendant was not used by the Government as primary evidence in the prosecution of that case. What was used was a "voluntary statement to reporters which, while still in jail, was made (by defendant) out of the presence of any officials."

In Stephenson v. United States, supra [257 F.2d 176], the statement given by defendant prior to his appearance before a United States Commissioner "was not used by the Government in presenting its case in chief." After defendant testified, certain conflicts in his testimony with his earlier statement were used in rebuttal by the FBI Agent, who testified that defendant had made to them the statement to which the Government had referred. "The written statement itself was not introduced in evidence, and no objection was made by defendant's attorney to this evidence."

Under the circumstances before this Court, the federal officers had knowledge that defendants were being unlawfully detained at a time when local police officers called their attention to possible federal violations by defendants, after which the federal officers immediately undertook to take written statements from the defendants in the presence of, and with the cooperation of, state officers. Where a custom and practice is established that local officers invariably release accused persons arrested by them to federal officers for prosecution, and no state charge is generally made against such accused, statements and confessions taken under such circumstances clearly fall within the ambit of Rule 5(a), Federal Rules of Criminal Procedure. Anderson v. United States, supra.

It is ordered by the Court that the separate motions for judgment of acquittal, notwithstanding the verdicts returned by the jury in this case, are by the Court sustained. The Court erred in failing to sustain the objections made to the introduction in evidence of defendants' ex-judicial statements as primary evidence, and, in failing to grant the motions of said defendants "for judgment of acquittal at the close of all the evidence."

It is ordered by the Court that the defendants be, and they are hereby, directed to be released from custody for the federal offense charged in the amended information filed herein, as it appears of record in this case that the Government does not have any additional evidence to sustain the charge made against defendants *aliunde* their written confessions, Exhibits 16, 17 and 18, adduced at the trial.