Ronald Vernon COWANS, Petitioner,

v.

WARDEN, MARYLAND PENITEN-
TIARY, Respondent.

Civ. A. No. 17888.

United States District Court
D. Maryland.

March 14, 1967.

Ronald Vernon Cowans, in pro. per.

Francis B. Burch, Atty. Gen., and Alan M. Wilner, Asst. Atty. Gen., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

HARVEY, District Judge.

Ronald Vernon Cowans, petitioner, is presently incarcerated in the Maryland Penitentiary as the result of a 1963 trial and conviction in the Criminal Court of Baltimore City. Petitioner entered a plea of not guilty to two counts of robbery but was found guilty as to both counts on December 11, 1963 by Judge Reuben Oppenheimer sitting without a jury. A co-defendant, Earl Hayes, was tried and convicted at the same time. On December 13, 1963, petitioner filed a motion for a new trial which was heard by the court and denied on April 28, 1964. Judge Oppenheimer thereupon imposed a sentence of 10 years on the first count and a consecutive sentence of 5 years on the second count. Petitioner was represented by court-appointed counsel at his arraignment, trial and at the hearing on his motion for new trial.

Petitioner, represented by new court-appointed counsel, then filed an appeal to the Maryland Court of Appeals. In an opinion handed down on April 29, 1965, the Court of Appeals affirmed the judgment and sentence of the lower court. Cowans and Hayes v. State, 238 Md. 433, 209 A.2d 552 (1965).

Petitioner next filed a petition in the Criminal Court of Baltimore City seeking relief under the Maryland Post-Conviction Procedure Act, Article 27, § 645 A–J. Again, different counsel was appointed to represent petitioner. A hearing was held as to this petition on November 9, 1965 in the Criminal Court of Baltimore City, and on November 12, 1965, Judge Harlan filed a written opinion denying petitioner relief. Petitioner then filed an application for leave to appeal to the Court of Appeals of Maryland, which was denied on November 18, 1966. Cowans v. Warden, 244 Md. 709, 223 A.2d 629 (1966).

Petitioner has now filed a petition in this Court for habeas corpus relief. Pursuant to a show cause order, the Attorney General of Maryland has filed an answer to the petition and has attached a copy of the transcript of the original trial before Judge Oppenheimer on December 11, 1963 and a copy of the record on appeal in the post-conviction proceedings, including a copy of Judge Harlan's opinion of November 12, 1965. The post-conviction proceedings before Judge Harlan, consisting solely of legal argument, were not transcribed. Judge Harlan noted in his opinion, however, that petitioner was invited to testify at such hearing but declined to do so.

In his petition for post-conviction relief, petitioner raised the following points:

1. Illegal arrest.

2. Unlawful interrogation

a. By police to build a case; and

b. Police turned down his request to call his mother and counsel.

3. Police interrogated petitioner and co-defendant until they gave prejudicial statements.

4. Denial of a prompt hearing.

5. Petitioner's indictment was born from

a. Illegal arrest;

b. Illegal interrogation; and

c. Illegal delay.

In addition, a sixth point was raised at the post-conviction hearing before Judge Harlan, namely, that the trial court improperly required petitioner to stand and give his name for the purpose of being identified by a witness. In his application for leave to appeal to the Court of Appeals of Maryland, petitioner pressed the same six points considered by Judge Harlan and, in addition, contended for the first time that his indictment was void under Schowgurow v. State of Maryland, 240 Md. 121, 213 A.2d 475 (1965). All seven points are again raised in this Court.

█ If petitioner's contentions are considered in reverse order, it is clear that *Schowgurow* entitles him to no relief. Smith v. Brough, Warden, 248 F. Supp. 435 (D.Md.1965); aff'd 362 F.2d 763 (4th Cir. 1966); Detoro v. Warden, Maryland Penitentiary, D.C., 264 F.Supp. 528 (D.Md.1967). Petitioner's conviction became final on April 29, 1965 when the opinion on his direct appeal to the Maryland Court of Appeals was filed. *Schowgurow* was decided on October 11, 1965.

█ Nor was it a violation of petitioner's constitutional rights when he was asked by the trial court to stand and state his name. Two defendants were being tried together, and after the witness Brannon had testified that "the small one, sitting over there" had grabbed her around the neck (Tr. 4), the trial judge made the request so that the record would clearly show which defendant was being identified. In complying with the trial court's request, petitioner was not being compelled to testify against himself within the meaning of the Fifth Amendment. Swingle v. United States, 151 F.2d 512 (10th Cir. 1945); Roberson v. United States, 282 F.2d 648 (6th Cir. 1960), cert. den. 364 U.S. 879, 81 S.Ct. 167, 5 L.Ed.2d 108 (1960); Peoples v. United States, 365 F.2d 284 (10th Cir. 1966).

Analysis of the other five contentions advanced by petitioner indicates that only three grounds for relief are in fact alleged, namely, illegal arrest, denial of a prompt hearing, and involuntary confession. For a proper consideration of these points, it will be necessary to summarize the historical facts involving petitioner's arrest, commitment and interrogation, as shown by testimony contained in the transcript of the original trial before Judge Oppenheimer.

At approximately 10:30 P.M. on September 22, 1963 a high school student, Ralph Beam, was attacked by two young men while standing near his father's car in the 1700 block of Lamont Avenue, in Baltimore City. Beam was grabbed from behind, and while one assailant held a knife at his throat, the other took his door key and wallet, the latter containing his fishing license, bus card and other identification cards. In the course of the assault, Beam was stabbed in his left side and was thereafter treated at St. Joseph's Hospital for such stab wound. Beam identified both petitioner and the codefendant Hayes at the trial on December 11, 1963, although he had not been able to positively identify the defendants at the police station on the night the incident occurred. Petitioner later admitted during his testimony that he had known Beam at Clifton Park Junior High School (Tr. 173).

At approximately 11:30 P.M. on the same evening, Mrs. Mae Brannon, a practical nurse at St. Joseph's Hospital, was assaulted by two "colored boys" as she was starting her car across the street from the Hospital. The shorter individual grabbed her around the neck, held her against the car and pressed an object against her. The other assailant seized her wallet, threw her out in the street and drove away in her 1963 Rambler automobile. The vehicle was a blue and white 4-door sedan with Maryland license No. CL 3223.

Shortly thereafter, acting in response to a radio call describing the stolen car and giving its license number, Officer Edwin Boston of the Baltimore City Police spotted the described vehicle in the 1400 block of Wolfe Street. Together with Officer James Diffenbaugh, Officer

Boston apprehended petitioner and the co-defendant Hayes in the Brannon car. The two defendants had in their possession Beam's wallet containing the fishing license, Mrs. Brannon's wallet and some cash. A pocket knife was recovered from petitioner. At the trial Mrs. Brannon likewise identified the defendants as her assailants, although she also had not been able to make such identification the night of the attack.

Following their arrest, petitioner and Hayes were taken to the Eastern District Police Station at approximately 11:45 P. M., were booked and were placed in separate cells. Neither petitioner nor Hayes was interrogated that night (Tr. 25). The next day, September 23, 1963, the interrogation of Hayes started at 11:00 A.M., and that of petitioner at 1:05 P.M. Petitioner was questioned that day from 1:05 P.M. to 1:20 P.M. and from 4:45 P.M. to 5:05 P.M. (Tr. 68).

Questioning of petitioner resumed on September 24 at 10:00 A.M., and he gave two statements to the police, one commencing at 11:00 A.M. and the other at 12:12 P.M. Hayes had given statements to the police on September 23 admitting participation in both crimes, and it was after petitioner had been confronted with the Hayes statements that he admitted his involvement. Both defendants were taken before a committing magistrate on September 25 at 3:00 P.M., some sixty-two hours after their arrest.

■■ Under the facts found by this Court as stated hereinabove, there was clearly probable cause for the arrest of petitioner without a warrant. The existence of probable cause is to be determined by the application of a practical standard, and it is sufficient if reasonable grounds exist for belief that a crime has been committed and that the person arrested committed it. Ralph v. Pepersack, 335 F.2d 128 (4th Cir. 1964), cert. den. 380

U.S. 925, 85 S.Ct. 907, 13 L.Ed.2d 811 (1965). In the present case, the police officers, who were cruising in the area, were notified by radio of the theft of an automobile and were given a description of the vehicle as well as its license number. A few minutes later, they spotted the car, pulled in front of it and apprehended petitioner and Hayes who were then in the stolen vehicle. Petitioner's contention that probable cause did not exist for his ensuing arrest is without merit.

■ Petitioner next claims that he was denied a prompt hearing after arrest and that such denial is a violation of the due process clause of the Fourteenth Amendment and renders inadmissible his subsequent confession. Had petitioner been arrested for a federal crime and tried in a federal court, this contention would have considerable merit. Cf. United States v. Schwartz, 372 F.2d 678 (4th Cir. 1967). However, neither Rule 5(a) [1] of the Federal Rules of Criminal Procedure nor the *McNabb-Mallory* [2] rule is applicable to criminal prosecutions in the state courts. Ralph v. Pepersack, supra. As the Supreme Court said in Gallegos v. State of Nebraska, 342 U.S. 55, 63–64, 72 S.Ct. 141, 147, 96 L.Ed. 86 (1951):

"* * * The rule of the *McNabb* case, considered recently in United States v. Carignan, 342 U.S. 36 [72 S.Ct. 97, 96 L.Ed. 48], is not a limitation imposed by the Due Process Clause. * * * Compliance with the *McNabb* rule is required in federal courts by this Court through its power of supervision over the procedure and practices of federal courts in the trial of criminal cases. That power over state criminal trials is not vested in this Court. A confession can be declared inadmissible in a state criminal trial by this Court only when the circumstances under which it is re-

---

1. Rule 5(a) requires that an officer making an arrest must take the arrested person "without unnecessary delay" before the nearest available commissioner or other federal officer empowered to commit persons.

2. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

ceived violate those 'fundamental principles of liberty and justice' protected by the Fourteenth Amendment against infraction by any state."

More recently the Supreme Court said the following in Culombe v. Connecticut, 367 U.S. 568, 600, 81 S.Ct. 1860, 1878, 6 L.Ed.2d 1037 (1961):

"The *McNabb* case was an innovation which derived from our concern and responsibility for fair modes of criminal proceeding in the federal courts. The States, in the large, have not adopted a similar exclusionary principle. And although we adhere unreservedly to *McNabb* for federal criminal cases, we have not extended its rule to state prosecutions as a requirement of the Fourteenth Amendment."

■ Although the sixty-two hour delay between petitioner's arrest for a state crime and his appearance before a magistrate is not grounds for habeas corpus relief in this Court, such delay is one of the circumstances to be considered in deciding the final issue raised herein by petitioner, namely, whether his confession was in fact voluntary. The exacting standards for the interrogation of suspects established by Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are not controlling here, because these decisions are not to be given retroactive application. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). *Escobedo* affects only those cases in which the trial began after June 22, 1964, and *Miranda* applies only to cases in which the trial began after June 13, 1966. The determination to be made by this Court is whether petitioner's confession meets "a substantive test of voluntariness which, because of the persistence of abusive practices, has become more increasingly meticulous through the years". Johnson v. State of New Jersey, supra, 384 U.S. at page 730, 86 S.Ct. at page 1779.

Before admitting petitioner's statements in evidence at the trial, Judge Oppenheimer required specific proof on the issue of voluntariness. Approximately one-half of the 177 page trial transcript consists of testimony concerning the voluntary nature of the statements given by petitioner and Hayes. Two police officers and two turnkeys at the Eastern District Police Station testified as to the circumstances leading up to petitioner's confession on September 24, 1963. The testimony of Sergeant Adams and of Officer Boston, who conducted the interrogation together, was essentially to the same effect, namely, that petitioner was not threatened or coerced in any way, that he was not subjected to physical abuse and that he read the statements and signed them of his own free will (Tr. 65–66, 76–78). Petitioner was advised before signing each statement that what he might say could be used for or against him in court (Tr. 117, 122). Each of the two turnkeys testified that he did not strike petitioner (Tr. 94, 100), nor were any cuts or bruises observed on petitioner (Tr. 102). All four police officers were cross-examined by petitioner's attorney.

Petitioner took the stand and told the court quite a different story. He claimed that on the first day of his interrogation the turnkey hit him four or five times in the face with his fists (Tr. 85), that the next day Sergeant Adams also beat him in the face while Officer Boston held him with both arms (Tr. 88), that when Sergeant Adams struck him a couple of times more he agreed to sign the statements, but that he suffered no cuts nor was otherwise marked by these beatings except for a split lip (Tr. 89). Following petitioner's testimony, the State introduced the official dispensary records of the Baltimore City Jail which showed that petitioner visited the dispensary on September 25 and complained solely of "tired eyes" and that no treatment other than sleep was prescribed (Tr. 103–104).

After hearing all the testimony, Judge Oppenheimer made the following finding (Tr. 107):

"THE COURT: I find each of these statements was given entirely

voluntarily, free from any duress, coercion, force or promise. I find the statements of the various officers who have testified entirely credible and do not believe the testimony of the defendants on this point. The objection is overruled."

On consideration of the record as a whole, this Court concludes that petitioner received a full, fair and adequate hearing before the state trial court concerning the voluntariness of his confession and that the trial court's findings are fairly supported by the evidence. Accordingly, this Court finds that the hearing in the state court satisfies all the requirements of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and 28 U.S.C.A. § 2254(d), as amended November 2, 1966. It should further be noted that the Maryland Court of Appeals, with the trial record before it, likewise concluded that "under the totality of the attendant circumstances the appellants' confessions were freely and voluntarily given and therefore were admissible." Cowans and Hayes v. State, supra, 238 Md. at page 437, 209 A.2d at page 555. Petitioner's claim that his confession was coerced was also made in his petition for post-conviction relief and was again rejected by both the trial and appellate courts.

Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761 16 L.Ed.2d 895 (1966), does not require a different result. In that case, the Supreme Court, after holding that *Escobedo* and *Miranda* would not be retroactively applied to a 1959 trial, went on to find that the petitioner's confession was the involuntary end product of coercive influences and thus constitutionally inadmissible in evidence. In that case the prisoner was an impoverished Negro with a third or fourth grade education. He had been interrogated repeatedly over a period of 16 days before he finally confessed. On one morning during this period, he was aroused at 5:00 A.M., required to walk 14 miles along railroad tracks and asked to point out a house from which (as an alibi) he claimed he had stolen certain incriminating articles found in his possession at the time of his arrest. The Supreme Court attached particular significance to the typing on an arrest sheet at police headquarters, indicating that the prisoner should not be allowed to see any one or to use the telephone.

▌ Here, petitioner was an 18 year old who went to the 10th grade in school, and who had been involved in several serious encounters with the police before this arrest. He had been in custody for only 1½ days when he confessed. The first day he was not questioned until the afternoon and then for a total of but thirty-five minutes with a three-hour break between the two interrogation sessions. The next morning, he confessed after a further interrogation of approximately one hour. None of the coercive factors stressed by the Supreme Court in *Davis* are present in this case.

Ledbetter v. Warden, 368 F.2d 490 (4th Cir. 1966) is also distinguishable on its facts. In that case the issue as to the voluntariness of the confession had not been presented to the state trial court. A plenary hearing was held by this Court which found that under all the circumstances the statements taken by the police had been obtained in violation of the due process clause of the Fourteenth Amendment. Judge Thomsen specifically found that Ledbetter, who had been convicted of first degree murder, had requested an opportunity to telephone his family and that his request was refused. As the Fourth Circuit Court of Appeals said at page 492:

"When Ledbetter was refused permission to make a phone call he knew full well that the police intended to hold him incommunicado and pursue their interrogations until they would bear fruit. The crucial inquiry is the suspect's knowledge that he will continue to be kept incommunicado. The coercive influence cannot be measured by the number of hours Ledbetter was actually detained, but only by the effect upon him of the obvious intention of the police to persist in their secret

inquisition without granting his request to communcate with the outer world."

 Petitioner alleges here that police turned down his request to call his mother and counsel. However, on two prior occasions, petitioner has chosen not to furnish evidence to the state trial court in support of this contention that he was not permitted to telephone his mother or an attorney. At the original trial, he testified extensively in an effort to convince the court that his confession was involuntary, but did not mention any refusal by police authorities to permit him to use the telephone.[3] The only evidence in the record in this connection indicates that petitioner never asked to make any calls. Under cross-examination by petitioner's counsel, Sergeant Adams testified that petitioner did not ask to make calls to any one (Tr. 69).

In his post-conviction pleadings, petitioner specifically alleged that the interrogation was unlawful because "police turned down his request to call his mother and counsel". Yet when Judge Harlan invited him to testify, he declined to do so. In the memorandum filed with his petition in this Court, petitioner admits that he declined to testify after an invitation from Judge Harlan and in fact asserts that such invitation was prejudicial, because it went beyond the Court's duty to advise petitioner of his right to take the stand or not. It is clear that Judge Harlan was doing no more than giving petitioner an opportunity to offer proof in support of his various allegations, including his claim that police held him incommunicado. It is likewise clear that petitioner had the right to choose not to testify. However, having made such choice, he cannot now be heard in this Court in support of his allegation that the police denied him the right to communicate with his family and counsel.

In declining to furnish any evidence on this issue on two separate occasions before the state trial court, petitioner has deliberately by-passed state procedures and cannot complain in this Court that the police held him incommunicado. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). This Court finds that under the circumstances set forth herein it was the considered choice of petitioner himself not to offer proof on this issue in the state court and concludes that petitioner cannot now be permitted to testify in this connection for the first time in this Court.

For the reasons stated, it is, therefore, this 14th day of March, 1967,

Ordered:

1. That leave to file in forma pauperis is hereby granted;

2. That the petition for a writ of habeas corpus be and the same is hereby denied; and

3. That the Clerk mail a copy of this Memorandum and Order to the petitioner and to the Attorney General of Maryland.

---

3. Petitioner's mother also testified in his behalf at the trial, but did not mention any refusal by the police to permit her to communicate with her son.