Herbert W. BOECKENHAUPT, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 11499.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 4, 1967.

Decided March 1, 1968.

Plato Cacheris, Alexandria, Va., (Court-appointed counsel) [James C. Cacheris, Alexandria, Va. (Court-appointed counsel) on brief] for appellant.

Robert L. Keuch, Atty., Dept. of Justice (J. Walter Yeagley, Asst. Atty. Gen., Kevin T. Maroney, Atty., Dept. of Justice, and C. Vernon Spratley, Jr., U. S. Atty., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

We affirm the decision of the district court imprisoning Herbert W. Boeckenhaupt for a term of 30 years for violations of the espionage statutes, 18 U.S.C. § 793 and 18 U.S.C. § 794.[1]

In April 1966 the defendant met with an employee of the Soviet Embassy under curious circumstances from which it might be inferred that the parties did not wish to be observed. Even prior to that meeting Boeckenhaupt had been under suspicion for engaging in espionage, and thereafter surveillance was intensified. In May 1966 the defendant, who was then a sergeant in the United States Air Force, was issued transfer orders taking him from Washington, D. C., to the March Air Force Base in California, and in connection with the reassignment he was thoroughly briefed on his duty under Air Force Regulation 205–57 to report all contacts with foreign nationals. For the next five months Boeckenhaupt was kept under careful observation both by the Federal Bureau of Investigation and the Air Force Office of Special Investigations for the double purpose of determining whether or not he was engaged in espionage activity and to assure, if he were, that such activity be of minimal harm to the security of the United States. Sometime in October 1966 the Air Force decided, in consultation with the National Security Agency, that the defendant could not be kept in his post in cryptography any longer. The Air Force OSI decided to arrest him and so informed the FBI. The arrest occurred on the morning of October 24, 1966, and involved the mutual cooperation of FBI agents and officers of the Air Force OSI. The actual arrest was effected by Air Force officers. Boeckenhaupt was advised that he was under arrest to be held for the prosecution of court martial charges based on Air Force Regulation 205–57. He was also advised that he

---

1. Boeckenhaupt was charged in a three-count indictment. He was convicted by a jury on counts one and two. Count one charged a violation of 18 U.S.C. § 794(c) in that the defendant conspired with an employee of the Soviet Embassy in Washington, D. C., and with other persons unknown to communicate, deliver and transmit information relating to the national defense of the United States to a foreign government. Count two charged a violation of 18 U.S.C. § 793 (a) in that the defendant and the same employee of the Soviet Embassy and other unknown persons conspired to obtain national defense information. The district judge directed a verdict of acquittal as to count three, which alleged a violation of 18 U.S.C. § 371 for conspiring to act as a foreign agent without registering as required by 18 U.S.C. § 951.

was under investigation for possible prosecution in the civil courts for violations of the espionage statutes. Soon after the arrest by Air Force officers, the defendant was interrogated by agents of the FBI for approximately three hours. As a result of this interrogation he signed a consent to a search of his apartment and admitted contact with a Soviet representative. Incriminating items of evidence were obtained by the search and put into evidence at the trial.

On the afternoon of October 28, 1966, officials of the Department of Justice in Washington, D. C., decided to seek an indictment and prosecute the defendant Boeckenhaupt for violations of the espionage statutes. The decision to prosecute was based on examination of the physical evidence obtained from Boeckenhaupt's home and on admissions made by him October 24, 26, 27 and 28. On the last three days the defendant's Air Force counsel was present with him during interrogation. October 28, 1966, fell on a Friday. On the following Monday, October 31, the defendant was served with a warrant of civil arrest at his place of detention in California, immediately taken before a United States Commissioner, and advised that he was charged with violations of the espionage statutes.

Boeckenhaupt earnestly protests the fairness of his trial and convictions on five grounds:

(I) That he was arrested without a warrant, and without probable cause, on October 24.

(II) That he was entitled on October 24 to be taken before a committing magistrate without unnecessary delay, and that the failure to do so deprived him of his rights under Rule 5 of the Federal Rules of Criminal Procedure with the result that the admissions made by him and the evidence seized in the consent search of his apartment must be excluded under the *McNabb-Mallory* rule.

(III) That the prosecutor and the district judge violated the defendant's Fifth Amendment rights by informing the jury that during custodial interrogations the defendant remained silent and refused to answer certain questions.

(IV) That counts one and two arise from the same acts and transactions and cannot lawfully be pyramided into separate counts to enable the court to impose consecutive sentences.[2]

(V) That the district judge violated the Jencks Act (Title 18 U.S.C. § 3500) by refusing to allow defense counsel access to certain notes and summaries made of reports.

## I.

■ The contention that there was no probable cause for the military arrest of Boeckenhaupt is without merit. The Air Force officers knew on October 24 when the arrest occurred that on an occasion seven months previous Boeckenhaupt drove an automobile from Maryland to Virginia at night, met with an employee of the Soviet Embassy in Virginia, drove to a bowling alley parking lot, remained in the parked car with the Soviet employee, and later on drove to another place where the Soviet representative left the automobile. The recital of such a curious meeting is sufficient to establish probable cause for a violation of Air Force Regulation 205–57. Certainly the defendant knew that he had not reported any contact with a foreign representative, and the circumstances of the meeting make it probable that he knew the position of the person with whom he met. We think it immaterial with respect to probable cause that the event occurred some seven months prior to the arrest.

## II.

■ We hold that Rule 5 of the Federal Rules of Criminal Procedure has no application to the arrest of a military person for a violation of military law or regulation. Fed.R.Crim.P. 1, 54; see

---

2. Defendant was given 20 years on count one and 10 years on count two to run consecutively and not concurrently.

Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). That Boeckenhaupt was lawfully detained did not prevent his being subjected to proper questioning without being taken before a commissioner. Mullican v. United States, 252 F.2d 398, 400 (5th Cir. 1958). The obligation to take Boeckenhaupt before a civil committing magistrate did not operate until October 31 when the second arrest occurred; at that time there was admittedly full compliance with Rule 5.

█ The defendant Boeckenhaupt contends that the Air Force and the FBI schemed together in an unlawful working arrangement whereby the Air Force would accomplish the military arrest of Boeckenhaupt for the purpose of enabling the FBI to evade Rule 5 and the *McNabb-Mallory* rule. The argument is the military charge was trumped up to facilitate the obtaining of admissions and consent to search. We think the argument is factually deficient and that the intent to prosecute on the military charge was both genuine and justifiable. In Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), the Supreme Court rejected the closely similar argument that the Immigration and Naturalization Service arrested the defendant but that the government's real aim was to put him in custody so that the FBI could obtain a confession of espionage:

> "It would make no sense to say that branches of the Department of Justice may not cooperate in pursuing one course of action or the other, once it is honestly decided what course is to be preferred. For the same reasons this cooperation may properly extend to the extent and in the manner in which the F.B.I. and I.N.S. cooperated in effecting petitioner's administrative arrest. Nor does it taint the administrative arrest that the F.B.I. solicited petitioner's cooperation before it took place, stood by while it did, and searched the vacated room after the arrest. The F.B.I. was not barred from continuing its investigation in the hope that it might result in a prosecution

for espionage because the I.N.S., in the discharge of its duties, had embarked upon an independent decision to initiate proceedings for deportation.

> "The Constitution does not require that honest law enforcement should be put to such an irrevocable choice between two recourses of the Government.

> \* \* \* \* \* \*

> "The test is whether the decision to proceed administratively toward deportation was influenced by, and was carried out for, a purpose of amassing evidence in the prosecution for crime. The record precludes such a finding by this Court." Id. at 229–230, 80 S.Ct. at 692.

It is clear that the investigation of Boeckenhaupt in his cryptography post had to be stopped for security reasons, and that on October 24, while there was insufficient evidence to support arrest for espionage, there existed probable cause for arrest for a violation of the military regulation. The arrest for violation of the military code was not a subterfuge to permit in custody interrogation but represented a genuine purpose at the time to prosecute in the military courts. This is not a case of detention being used as the vehicle of investigation, but is, instead, a case of detention having been postponed, as long as national security would permit, for noncustodial investigation. We think that United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48 (1951), and Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943), relied on by defendant Boeckenhaupt, are clearly inapplicable to the facts of this case.

### III.

At the initial FBI interview of the defendant, occurring soon after the military arrest on October 24, 1966, Boeckenhaupt was given the *Miranda* warnings and both orally and in writing consented to the interview and stated that he did not want a lawyer at that time. After talking with the agents for some three hours Boeckenhaupt decided that he did want

counsel, and military counsel was promptly appointed for him. No interviews were conducted on Tuesday, October 25. On Wednesday, October 26, Thursday, October 27, and Friday, October 28, further interviews, in the presence of counsel were conducted with the consent of the defendant and his appointed counsel. At the trial the statements made by the defendant Boeckenhaupt were offered to the court and jury through the testimony of FBI Agents Birch and Layhew. The transcript of their testimony extends over some 150 pages of the transcript of the trial. Twice during this lengthy narration error occurred, but we think it unintentional and inadvertent on the part of the prosecution. The agent testified that he had questioned defendant extensively as to whether or not defendant arranged the April 20, 1966, meeting with the employee of the Soviet Embassy. The agent then stated on the witness stand, "The Sergeant [Boeckenhaupt] on advice of his attorney said he did not wish to comment on this." Later on the same agent testified that Sergeant Boeckenhaupt was asked if he had ever received any money from Robert (the Soviet representative.) The agent testified, "He would give no answer to the question."

▇▇ In a long, complex trial such as this one, we think it inevitable that occasionally improper answers will be elicited by perfectly proper questions. The questions asked here were not objectionable and, indeed, were not objected to. The answers were, of course, improper. But in view of the district judge's instruction to the witness in the presence of the jury,[3] we have no hesitation in saying that even if these isolated answers in the course of lengthy testimony constituted a violation of Boeckenhaupt's Fifth Amendment right that he not incriminate himself, we are "able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

## IV.

▇▇ We do not doubt the power and authority of Congress to break down into separate offenses various aspects of espionage activity and to make each separate aspect punishable as provided separately in 18 U.S.C. § 793 and 18 U.S.C. § 794. Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); Burton v. United States, 202 U.S. 344, 377, 26 S.Ct. 688, 50 L.Ed. 1057 (1906).

## V.

▇ We have carefully considered defendant's contention that the procedures followed at trial concerning the production of documents were in violation of the Jencks Act (18 U.S.C. § 3500) and find it to be without merit.

Affirmed.

---

3. In open court the district judge instructed the witness in part as follows: " * * * where he [Boeckenhaupt] is asked a question in the presence of his counsel, by you or the other agent, and the counsel advises him not to answer, just don't mention that question because that is what his counsel is there for * * *."

WITNESS: "You mean don't mention the attorney, Sir?"
COURT: "Mention the attorney, but don't mention what you asked him and then say his counsel told him not to answer that. That is what his counsel is there for, to advise him what questions to answer * * *."