**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**Alan Eugene REED, Defendant,**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**Jerald Dee SARTAIN, Defendant,**
**Appellant.**

**Nos. 31–69, 32–69.**

United States Court of Appeals
Tenth Circuit.

June 26, 1969.

James H. Harrod, Oklahoma City, Okl., for appellant Reed.

Andrew L. Hamilton, Oklahoma City, Okl. (Robert A. Miller, Oklahoma City, Okl., on the brief), for appellant Sartain.

John W. Raley, Jr., Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., on the brief), for appellee.

Before PHILLIPS, SETH and HICKEY, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

On September 16, 1968, a two-count indictment was returned against Reed and Sartain[1] in the United States District Court for the Western District of Oklahoma.

The first count charged that the defendants on April 27, 1968, within such District, "by means and use of a dangerous weapon, that is a \* \* \* steel chain, did forcibly assault, resist, oppose, impede, intimidate and interfere with J. Pat Madrid, Deputy United States Marshal, and Edward Joseph Dougherty, a person employed to assist said deputy marshal, knowing them to be officers and employees of the United States, while" Madrid and Dougherty "were engaged in the performance of their official duties," in violation of 18 U.S.C. §§ 111 and 1114.

The second count charged that on such date and within such District, the defendants, having each been convicted of a felony against the United States, and being then and there held in lawful cus-

---

1. Hereinafter referred to collectively as the defendants.

tody by a United States Deputy Marshal and "while being transported to a place of confinement by direction of the Attorney General, did wilfully and unlawfully escape from such custody," in violation of 18 U.S.C. § 751.

Each defendant, accompanied by a court-appointed lawyer, was arraigned in the United States District Court for the Western District of Oklahoma on both counts of the indictment on October 25, 1968, at which time each of them entered pleas of not guilty, without prejudice to their right to file pretrial motions should they be so advised. Such motions were filed and disposed of. Following their disposition and on November 12, 1968, the case came on for trial. Verdicts of guilty were returned against each defendant on both counts of the indictment.

On November 21, 1968, Reed was sentenced to the custody of the Attorney General for a term of ten years on Count 1, to commence at the expiration of a sentence he was then serving on a kidnaping charge and run concurrently with a sentence theretofore imposed for murder, and five years on Count 2, to run concurrently with the sentence imposed on Count 1.

On November 21, 1968, Sartain was sentenced to the custody of the Attorney General for a term of ten years on Count 1, to commence at the expiration of a sentence he was then serving for bank robbery, and five years on Count 2, to commence at the expiration of the sentence on Count 1.

The defendants have appealed.

■ We have examined all of the evidence adduced at the trial and are fully convinced that it constituted substantial proof of the offenses charged against each defendant in both counts of the indictment and fully warranted the jury in finding each of them guilty beyond a reasonable doubt on both charges.

Shortly after the assault and on April 27, 1968, the defendants were captured and returned to the same status they were in at the time of their escape, namely, prisoners then serving sentences on former convictions on Federal felony charges being transferred under lawful orders from the United States Penitentiary at Leavenworth, Kansas, to Phoenix, Arizona.

■ No complaint charging the defendants with assault and escape was ever filed with a United States Commissioner. They were not arrested on a Commissioner's warrant, issued on a complaint filed before him, nor without a warrant on the assault and escape charges, or either of them. At the time of the escape they were already in Federal custody, serving sentences on former convictions of felonies, and on their apprehension after their escape that custody was restored. It follows that Rule 5(a) of the Federal Rules of Criminal Procedure has no application,[2] and the defendants' contention that they were not accorded their rights under Rule 5(a) is entirely without merit.

■ With respect to the time after the commission of the offenses of assault and escape within which criminal charges should have been filed against the defendants, it is sufficient to say that it is well settled that such time is controlled exclusively by the applicable statute of limitations.[3] The charges were presented to the grand jury and the indictment returned within a few months after the commission of the offenses and well within the applicable statute of limitations.[4]

On September 18, 1968, two days after the indictment was returned, writs of habeas corpus ad prosequendum were

2. Redinger v. United States, 10 Cir., 404 F.2d 310, 312, and cases there cited; United States v. Carignan, 342 U.S. 36, 42, 43, 72 S.Ct. 97, 96 L.Ed. 48.

3. Hoopengarner v. United States, 6 Cir., 270 F.2d 465, 469; Nickens v. United States, 116 U.S.App.D.C. 338, 323 F.2d 808, 809; Harlow v. United States, 5 Cir., 301 F.2d 361, 366, cert. denied 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56.

4. 18 U.S.C.A. § 3282.

duly issued, one directing the United States Marshal for the Western District of Oklahoma to bring Sartain from the United States Penitentiary at Leavenworth, Kansas, to Oklahoma City, Oklahoma, for trial on such indictment, and the other directing such United States Marshal to bring Reed from the Federal Detention Center at Florence, Arizona, to Oklahoma City, Oklahoma, for trial on the indictment. Under such writs the defendants were brought to Oklahoma City and arraigned on the indictment within nine days after it was returned. Prior to the arraignment, the court appointed a lawyer to represent Reed and another lawyer to represent Sartain, and each continued to represent the defendant he was appointed to defend from that time on, throughout all of the trial proceedings.

At the beginning of the arraignment proceedings, the court explained to the defendants the nature of the offenses charged in the indictment and the possible punishment, if convicted, and then and thereafter during all of the trial proceedings defendants were fully accorded their Constitutional rights.

█ Defendants were brought to trial on the indictment on November 12, 1968, and the trial was concluded on November 13, 1968. It is clear that they were not denied a speedy trial.

Section 111, supra, in part reads:

"Whoever forcibly assaults * * * any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, * * *."

Section 1114, supra, in part reads:

"* * * any United States marshal or deputy marshal or person employed to assist such marshal or deputy marshal, * * *."

█ Madrid was a Deputy United States Marshal for the District of Arizona, and while Dougherty was a Probation Officer, he was a person employed orally by the United States Marshal for the District of Arizona to accompany Madrid to Leavenworth to act as a guard and assist Madrid in transporting the defendants from Leavenworth to Phoenix, Arizona, and Dougherty was so engaged in assisting the Deputy United States Marshal at the time of the assault and escape. Hence, both are persons designated in 18 U.S.C. § 1114, and the contention of defendants that Dougherty's official status was not established is entirely without merit.

██ Prior to the trial, the defendants jointly petitioned the court for writs of habeas corpus ad testificandum to bring several inmates of the United States Penitentiary at Leavenworth, Kansas, to Oklahoma City to testify as witnesses for them at the trial. They delivered to the court a letter stating in substance what each of such inmates would testify to. The court also, at defendants' request, appointed an investigator to assist them in preparing their defense. The investigator interviewed such inmates. On examination of the letter and the report of the investigator in camera, the court concluded the testimony of the inmates would be wholly immaterial. The granting of such a writ rests in the sound discretion of the court, and there was no showing that the court abused its discretion.

Under Rule 17 of the Federal Rules of Criminal Procedure, a number of witnesses, some living in Oklahoma and others in other sections of the United States, at the defendants' request and at the expense of the Government, were brought to Oklahoma City to testify as witnesses for the defendants at the trial. The defendants were not denied compulsory process for witnesses whose testimony was in any way material to their defense.

The question of Reed's insanity was raised rather obliquely at the trial, and that issue was properly submitted to the jury by the court. It found that Reed was legally sane.

Affirmed.